[No. 26351.   Department Two.   March 17, 1937.]

ELI E. HAMBLET, *as Administrator, Appellant,* v.
WALLY SODERBURG *et al., Respondents.* [1]

*Ballard & Houghton,* for appellant.

*Poe, Falknor, Falknor & Emory, J. Speed Smith,*
and *Henry Elliott, Jr.,* for respondents.

TOLMAN, J.—This is an action for wrongful death
brought by the administrator of the estate of the de-
ceased for the benefit of the surviving husband and
minor children.

Trial was had to a jury, and at the close of plaintiff's
case the trial court sustained a challenge to the suffi-
ciency of the evidence and granted a nonsuit.   A mo-
tion for a new trial was made and denied.   A judgment
of dismissal was thereupon entered, from which judg-
ment the plaintiff has appealed.

The errors assigned question the ruling which took
the case from the jury, hence the evidence must be
considered.

[1]Reported in 65 P. (2d) 1267.

The fatal accident occurred at the intersection of north Fortieth street and Corliss avenue, in the city of Seattle. Both streets are paved. North Fortieth street is thirty feet between curbs, and Corliss avenue is twenty-five feet between curbs. The pedestrian walk across north Fortieth street on the east side of Corliss avenue is not marked on the pavement. The city operates passenger busses westerly on north Fortieth street.

Immediately before the time of the accident, Jane E. Hamblet, the deceased, was standing on the sidewalk at the northeast corner of the intersection of the two streets named, waiting for a west-bound bus, apparently intending to become a passenger thereon. The bus approached in the usual way and stopped with its wheels against and parallel with the north curb of north Fortieth street and its front bumper about even with the extended line of the easterly edge of the east sidewalk on Corliss avenue. Practically at the instant that the bus stopped, a Mr. and Mrs. O'Donovan, who lived on the east side of Corliss avenue just south of north Fortieth street, left their home, proceeded north on Corliss avenue in their automobile, and stopped at the intersection.

Mrs. Hamblet, on the opposite side of north Fortieth street, as heretofore indicated, was just about to board the bus. She saw the O'Donovans in their car, and, as she knew them well and was in the habit of riding with them and thinking, perhaps, that they were inviting her, or depending on custom, she stepped from the sidewalk into the street immediately in front of the standing bus and started hastily across north Fortieth street toward the O'Donovan car. So proceeding within the lines of the sidewalk, projected, she was struck and killed by respondent's car, which was being driven west on north Fortieth street.

There were a number of eye witnesses who observed Mrs. Hamblet's actions, from and before the instant when she started to enter the intersection until after she was struck, so that there is no room for any presumption. The question of her contributory negligence (which was the ground upon which the nonsuit was granted) must be determined from what these witnesses saw and said, and from any inferences which may reasonably be drawn from their testimony.

The driver of the bus testified:

"I pulled up and stopped, opened the door. One of the passengers got on, but the other passenger instead of getting on the bus went around in front of the bus and hurried across the street to a car that was waiting for her, or apparently was waiting for her. When she hurried in front of the bus she smiled up at me kind of apologizing for not taking the bus after she had intended to. And then she walked across the street and she didn't look back after that until she was hit, just at the moment that she crossed in front of the bus. . . . I looked back across my shoulder to see if there was any car coming, and an automobile was coming up Fortieth to pass the bus at that instant, and they came together then slightly to the left and in front of the bus, where this car and this lady collided, and she was hit by the car. . . . She was passing at an angle. When she went—when she started across the street from close to the right front corner of the bus, naturally she was quite close to the bumper, but as she passed the left front corner of the bus at the angle she was going I suppose it would be a couple of feet."

On cross-examination, this witness further testified:

"Q. At the time she looked at you just as she stepped off from the curb and you thought apologize for not riding with you, did she look straight ahead towards this car that was standing? A. She never looked back at all. Q. She looked directly towards the car and never looked to her left? A. Positively. I am positive about that because I watched her. Q. When she left here with the intention of going to the automobile

standing in the center of Corliss avenue, she looked directly toward it and never looked to her left as she reached out from in front of your bus, never looked back to her left? A. No, she didn't look back. Q. To see approaching traffic? A. She didn't look back to see approaching traffic, no. Q. Now as I understand you when she started across—and she was running, too, wasn't she? A. Not what I say running, but she wasn't walking. She was going faster than a walk.''

All of the other eye witnesses corroborate this witness in the particulars that are vital upon the question of contributory negligence. That is to say, all agree as to the conditions under which the lady stepped into the intersection. All, except Mr. and Mrs. O'Donovan, who were silent upon that subject, agree that she did not look for approaching traffic. All agree that she was hurrying at a pace faster than she would ordinarily walk. Perhaps, on some points, some of the witnesses do not go as far as the witness we have quoted, but certainly the record discloses no testimony which is contrary to that which we have set out, and no one, not even the O'Donovans, undertook to say that the lady made any attempt, even the slightest, to ascertain if there were vehicles approaching from her left before she advanced beyond the standing bus and into the line of traffic.

■ Present day traffic upon our streets and highways is of such a nature that the duty of reasonable care, which rests upon all, requires, in almost any conceivable situation, a fairly efficient attempt at observation before a pedestrian steps into the path of vehicular traffic.

Where, as here, no attempt at observation is made and especially where one steps out from behind an obscuring object, the pedestrian is guilty of negligence as a matter of law.

This conclusion seems to be self-evident, but reference may be had to the following of our cases, which, in principle at least, sustain our present holding: *Jones v. Seattle*, 144 Wash. 188, 257 Pac. 393; *Gottstein v. Daly*, 166 Wash. 582, 7 P. (2d) 610.

Even had there been testimony that Mrs. Hamblet had looked but did not see the approaching automobile, still there could have been no recovery. *Silverstein v. Adams*, 134 Wash. 430, 235 Pac. 784; *Steinheim v. Nicholas*, 171 Wash. 614, 18 P. (2d) 836.

There being testimony as to every movement of the deceased, there is no room for a presumption that she used due care. The facts are clear and undisputed, presenting no question upon which reasonable minds might differ and therefore no question to go to the jury.

The trial court ruled correctly. The judgment is affirmed.

STEINERT, C. J., HOLCOMB, BEALS, and ROBINSON, JJ., concur.