[No. 30382.   Department Two.   May 20, 1948.]

HANNAH WILLIAMS, *Appellant*, v. PAUL A. BROCKMAN, *Respondent*.[1]

*Warner, Pierce & Peden* (*Stanley C. Soderland*, of counsel), for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann*, for respondent.

JEFFERS, J.—This action was instituted by Hannah Williams, a widow, against Paul A. Brockman, in the superior court for King county, to recover damages for injuries alleged to have been received by plaintiff as the result of

[1]Reported in 193 P. (2d) 863.

being struck by an automobile being negligently operated by defendant. The accident is alleged to have occurred within the intersection of Fifteenth avenue northwest and Leary way, on January 11, 1944, at about six-thirty p. m.

Defendant, by his answer, denied the material allegations of the complaint and, as an affirmative defense, alleged contributory negligence on the part of plaintiff.

The cause came on for trial before the court and jury on February 4, 1946, and on February 5th following, the jury returned a verdict in favor of defendant. Motions for judgment notwithstanding the verdict and in the alternative for new trial were filed by plaintiff and denied. On June 12, 1947, plaintiff filed a motion to vacate the order of June 5, 1947, denying plaintiff's motion for new trial, and on June 18, 1947, the court entered an order denying plaintiff's motion to vacate. On June 12, 1947, the court entered a judgment dismissing the action.

Plaintiff has appealed from the judgment of dismissal and all orders entered in the cause, including the order denying plaintiff's motion to vacate, entered June 18, 1947.

The errors assigned are in denying appellant's motion for a directed verdict; in denying appellant's motion for new trial, and entering judgment of dismissal; and in denying appellant's motion to vacate the order denying appellant's motion for new trial.

Appellant, in her brief, states but one question as being involved in this appeal, namely:

"Is the evidence that was introduced in this case sufficient to sustain the verdict rendered for defendant?"

Respondent makes the following counterstatement of the question involved:

"Did the trial court abuse its discretion when it denied the plaintiff's motion for new trial and entered judgment on the jury verdict in a case where the testimony on the question of liability consisted only of the two interested parties and was in dispute?"

The only witnesses who testified regarding the accident were respondent, Paul A. Brockman, and appellant, Hannah Williams.

It will be noticed that no error is based upon the giving or the refusal to give any instructions.

As stated, the accident happened within the intersection of Fifteenth avenue northwest and Leary way. Leary way runs in an easterly and westerly direction, and Fifteenth avenue northwest runs north and south. There is a traffic light hanging over the center of the intersection.

As stated, but two witnesses testified relative to where and how the accident occurred. Appellant called respondent as an adverse witness, and she testified in her own behalf. Respondent called no witness.

As will hereinafter appear, there was a conflict in the testimony as to just where the accident occurred, and as to whether appellant was struck by the radiator of respondent's car, or whether she walked into the right side of his car.

Respondent's testimony may be summarized as follows: The accident happened about six-thirty o'clock on the evening of January 11, 1944. Just before the accident, respondent was proceeding east on Leary way, intending to turn north on Fifteenth avenue northwest. As he approached the intersection, the traffic·light was green. There were no cars coming from the north, and respondent entered the intersection, with the green light, at a speed of between twelve and fifteen miles per hour. He went clear around the center of the intersection and made a left-hand turn to the north. Respondent stated that he did not see appellant before the accident; that appellant came in contact

"   .   .   .   with the stepboard. Q. With the what? A. Between the front fender and the back fender, the stepboard. Mr. McKelvy: The running-board, the stepboard? The Witness: Yes. Q. (By Mr. Martin) Where was she with regard to the right front door of your car, and the position— A. (Interposing) The right front door of my car is right by the footstep— Q. (Interposing) Where did she come in contact with your car with regard to that? A. Must have been right then. Q. Right there? A. Yes. Q. What did you do after the accident? A. I stopped. Q. Stopped, did you get out? A. Yes.   .   .   .   Q. Where did you find her at that time? A. She was on the street."

Respondent stated that he and some other men carried appellant over to the east side of the intersection. Respondent testified that he had completed his turn and was traveling due north at the time of the accident. He further stated that he talked to appellant the next day at the hospital, and she said that she did not see him.

"Q. (By Mr. Martin) Did you at that time tell her that you did not see her? A. I did. Q. That is a fact? A. I didn't see her, and she didn't see me."

Respondent stated that there was no damage done to the front of his car, and none to the right front fender. Respondent was informed by a traffic officer that he could go home and was not charged with negligent driving.

"Q. Are you able to say whether or not she was on the crosswalk there? A. She was not on the crosswalk. Q. Where was she with regard to the crosswalk? A. I don't know. There was nobody when I swung down. Q. I am not talking about what you have seen. We have gone into that, I am talking about this noise you heard, you heard a noise, did you not? A. No—well, yes, that was when she hit the car. There was something like a bird come, and I didn't sense right away what it could be, because I didn't hit any—it just come like something leaned against— Q. (Interposing) Are you able to say where she was at that time with regard to the crosswalk? A. No. Q. At the time you picked her up? . . . THE WITNESS: Oh, —well, she was about, I would say six or eight feet from the line of the crosswalk. Q. (By Mr. Martin) You mean north of the— A. (Interposing) North of it. Q. She was six or eight feet north of the crosswalk when you picked her up? A. Yes, she—when I saw—I saw her arm. That is what I first saw. By the window, she raised her arm, and fall over from the car. I saw that. That is when I stopped. Q. That is when you heard the noise you refer to? A. No, no noise. The noise was when she compact with the car, or not the noise, but well,—I don't know how to explain it. Just like a push against—"

Respondent further stated that appellant fell toward the east.

Appellant, at the time of the accident, was sixty-two years of age. She stated that, on the night in question, she

alighted from a bus at the southeast corner of the intersection, intending to take a bus for home, which stopped at the northwest corner of the intersection; that, when the light turned green, she walked over to the northeast corner of the intersection and stood there until the light had changed a couple of times, and then when the light turned green again she started to cross on the crosswalk from the northeast to the northwest corner of the intersection; that before she started to cross the street, she looked for traffic in all directions, and there was none going north or west, and traffic on the south had stopped; that she was walking on the crosswalk.

"Q. (By Mr. Martin) Did you see the defendant's car at all? A. No. . . . Q. Whereabouts was the car when the accident took place? . . . THE WITNESS: I was on the crosswalk when the car struck me, with the fender, not fender, the bumper. I will get it right after a while. The radiator. Q. Where were you with regard to the street or the intersection, now, at that time? A. What is the question? Q. How close to the west or the east curb; could you give us some idea where you were with regard to the east side of 15th Northwest, or the west side of 15th Northwest? A. I was three-fourths over on the west side. Q. What was the condition of that traffic light about the impact? A. I was three-fourths over on the west side. I saw the car stopping on the west side, so I swung my body in order to see where the light was, and as I swung back I was hit. The radiator on my left arm."

Appellant stated that she knew the radiator struck her.

"Q. You have answered the question. You mentioned the radiator struck you? A. Yes. Q. Either the bumper or radiator. A. No, it was no bumper. It was the radiator. Q. Definitely was the radiator? A. Yes. Q. Right in the middle of the radiator? A. Yes, I even heard the water. He didn't throw the brakes on until he hit me. Q. Well, what happened, which way did you fall? A. I don't know which way I fell. I heard the air going out of me. Q. The car didn't run over you at all. A. I don't know what happened to me. Q. You weren't unconscious? A. I know my clothes were not soiled or torn. Q. You were conscious all the time, weren't you? A. No. Q. You were right shortly afterwards, isn't that right? A. No. Q. How long was it before you were conscious? A. I don't know just how long it was. . . .

A. I know they had me a long time across the street, that it seemed as though it had been when I began to come,—revived. They were holding me there instead of calling an ambulance. Q. You were conscious when you were lying on the street? A. This man carried,—helped this man carry me across. Q. You knew that? A. And a woman went out and got my things. Q. Just a minute. You were conscious, and knew when the men carried you over? A. No, I didn't know they were carrying me. Q. Didn't know at all? A. I couldn't open my eyes. I had no strength, . . .

"Q. Mrs. Williams, you said that the radiator came in contact with you. Did you judge that because you heard the water in the radiator? A. I felt the bump. Q. You felt the bump? You didn't actually— A. (Interposing) I felt it. Q. You felt it, but you didn't actually see the radiator, did you? A. No, I swung around in such a hurry. Q. Which way did you swing? A. To the—swinging, when I first swung I swung to the east, then back to the west."

█ No complaint is made of any instruction given in this case, and, as stated, there is a direct conflict in the testimony regarding whether appellant was struck by the radiator of the car, or whether she walked into the side of the car. There is also a direct conflict in the testimony as to just where appellant was when the accident happened. We are of the opinion the case was properly submitted to the jury, and it is evident that the jury believed respondent's story of how and where the accident happened.

In the case of *Ogilvie v. Hong*, 175 Wash. 209, 27 P. (2d) 141, we approved the following instruction:

" 'You are instructed that if you find that the decedent walked into or against the side of the defendant Hong's car, then the decedent was guilty of negligence as a matter of law and your verdict must be for the defendants.' "

The opinion states:

"Appellant argues that there may be instances where one might, under peculiar circumstances, walk into or against the side of a moving automobile without being guilty of negligence as a matter of law. That may be true, but the instruction was given with reference to the testimony which was before the jury in this case. The theory of the appellants was that the deceased was run down and struck by the forward end of the car, while that of the defense was

that without looking he walked into the side of the car. The testimony offered on each side was in harmony with and tended to support the particular theory which the party was advancing. The jury was bound to accept one theory or the other."

See, also, *Estill v. Berry*, 193 Wash. 10, 74 P. (2d) 482.

If the jury believed respondent's testimony, as they apparently did, they were justified in concluding that respondent came into the intersection with the green light; that he went around the center of the intersection and turned to the left to go north on Fifteenth avenue northwest, on his side of the traffic lane; that he saw nothing in front of him on the crosswalk and did not know of appellant's presence until she walked into the side of his car, and he saw her hand thrown up. If respondent's story is believed, it does not appear that there is any reason why appellant did not see respondent's car.

Appellant argues that there is no evidence in the case which amounts to a logical excuse for running down a pedestrian in the crosswalk, "where she had an absolute right of way over the defendant automobile"; that the fact that respondent did not see appellant must necessarily have been due to his fault in not looking, or to the fact that his visibility was impaired. Assuming that the court instructed the jury that appellant had an absolute right of way over respondent's automobile, appellant's argument might be applicable, had the jury found that appellant was struck by the front end of respondent's car, or in other words, run down; but, as stated, it is apparent they did not so find.

Some contention seems to be made relative to the effect of respondent's testimony, he having been called as an adverse witness. There is no question but that it is the rule that a litigant, calling the adverse party for examination, under Rem. Rev. Stat., § 1225 [P.P.C. § 42-1], is not bound by the testimony of such witness. However, in *Crown v. Miller*, 199 Wash. 354, 363, 91 P. (2d) 713, referring to this statute and to Rem. Rev. Stat., § 1229 [P.P.C. § 42-9], we stated:

"We think, under these statutes, the testimony of an adverse witness is received under the same rules of examination as any other witness, and that the *jury* has the right to consider such testimony the same as that of any other witness. However, the statutes do give to one calling such a witness the right to rebut such testimony, if he desires so to do, and then the *jury* may consider all the testimony, with no *limitations* or *qualifications* placed upon the testimony of the adverse witness, in so far as its consideration by the *jury* is concerned, any more than on any other witness." (Italics ours.)

The case of *Stanley v. Allen*, 27 Wn. (2d) 770, 180 P. (2d) 90, cited by appellant, was reversed and a new trial granted because of an erroneous instruction given by the trial court. The question of whether or not there was a jury question presented was not before the trial court.

In the instant case, it must be assumed the jury were fairly instructed, and the only question presented is whether or not there is substantial evidence to sustain the verdict of the jury.

Appellant also cites the case of *Miller v. Edwards*, 25 Wn. (2d) 635, 171 P. (2d) 821, to sustain her contention that respondent should have seen her. We are of the opinion the factual situation presented in the cited case is so different from that presented in the instant case, that the cited case is not controlling here. We desire, however, to quote a statement made in the cited case, which we think applicable in considering cases of the character now before us.

"A pedestrian must use the right of way accorded him by statute at a recognized street crossing, with due care for his own safety. By his negligence, a pedestrian may subject himself to a ruling that he was guilty of contributory negligence as matter of law, or he may by his conduct justify a finding by the trier of the fact that he was guilty of contributory negligence as matter of fact. Those are questions which must be determined in each individual case as it arises."

In conclusion, may we call attention to the case of *Strom v. Dobrin*, 29 Wn. (2d) 198, 186 P. (2d) 906, not referred to in either of the briefs filed in the case now before us. The opinion in the cited case was not filed until November

17, 1947, which was subsequent to the time the briefs in the instant case were printed and filed.

While the accident in the cited case occurred in a controlled intersection, between a pedestrian and an automobile making a left turn in the intersection, the factual situation presented, as to how the accident happened, was different from the factual situation which the jury in the instant case were justified in believing existed. In the cited case, error was based upon the refusal to give a requested instruction, while in the instant case no error was based upon the giving of any instruction or the refusal to give a requested instruction, and the law as set forth in the instructions became the law of the case.

For the reasons herein assigned, the judgment of dismissal, based on the jury's verdict, is affirmed.

MALLERY, C. J., BEALS, STEINERT, and SIMPSON, JJ., concur.