BETTY WOODY, Bnfd.,

*v.*

HESTER A. COPE et al.

R. F. WOODY

*v.*

HESTER A. COPE et al.

(*Knoxville,* September Term (May Session), 1959.)

Opinion filed September 9, 1960.

Dietzen, Graham & Dietzen, Chattanooga, for plaintiffs in error.

80

SPEARS, MOORE, REBMAN & WILLIAMS, Chattanooga, for Southern Coach Co.

GOINS & GAMMON, Chattanooga, for Hester A. Cope.

PER CURIAM.

The Court of Appeals speaking through McAmis, Presiding Judge, writing the opinion for the majority of that court, reversed the trial court wherein it had directed a verdict on behalf of the Southern Coach Lines. In this same opinion the verdict of the jury in favor of the defendant, Mrs. Cope, was affirmed. We granted certiorari, heard argument and have very carefully con-

sidered the very comprehensive briefs filed by both parties. All questions of fact and law, which were presented in the Court of Appeals, have been presented to us. After a careful consideration of the questions here presented we have reached the conclusion that the Court of Appeals has fully answered all questions presented and correctly decided the case. To re-write the opinion on these questions would serve no useful purpose and we, therefore, adopt the opinion of the Court of Appeals as the opinion of this Court. *Boillin-Harrison Co. v. Lewis & Co.,* 182 Tenn. 342, 187 S.W.2d 17.

"We speak of the parties as they appeared in the trial court. Plaintiff Betty Woody, aged 14½, sued for personal injuries sustained when struck by an automobile driven by defendant, Hester A. Cope. Her father, R. F. Woody, sued for medical expenses and loss of services.

"Defendants were Hester A. Cope and Southern Coach Lines, Inc., a carrier serving the Chattanooga area.

"At the close of plaintiff's proof the learned trial judge sustained the Coach Line's motion for a directed verdict. At the close of all the proof Mrs. Cope unsuccessfully moved for a directed verdict, except as hereinafter noted, and the case went to the jury which found a general verdict in her favor. Plaintiffs moved for a new trial which was denied. This appeal followed.

"The declarations are in common law and statutory counts. They charge, as to the Plaintiff, Betty Woody:

"(1) That on June 18th, 1957, at the intersection of East Third Street and Cumberland Street in Chattanooga she was injured when struck by a car driven by defendant Hester A. Cope while she (Mrs. Cope) was

undertaking to pass a bus of the Coach Lines negligently stopped, parked or standing on the north side of E. Third Street at or near the intersection; that immediately before the accident the plaintiff with some teen-age associates had been standing at the north-east corner of said intersection (E. Third Street, containing four lanes, running east-west and Cumberland Street intersecting it at a right angle) and that while so waiting the Coach Lines had negligently stopped a large bus on the northern lane next to the curb, thereby blocking her view of traffic approaching from the east; that the driver of the bus then signalled to her and her associates that it was safe for them to cross the street which was unprotected by traffic signals; that she and her associates went out on East Third Street to a point where they could see around the bus and that at that time no automobile was in sight; that they attempted to cross said street when Mrs. Cope negligently, recklessly and at a fast rate of speed, without having her vehicle under control and without keeping a proper lookout for pedestrians drove from *behind* the bus and into and against the plaintiff causing the injuries sued for. It was charged that such acts of negligence on the part of the defendants 'concurred to cause the accident and plaintiff's injuries.'

"(2) That under Ordinance 4269 of the City of Chattanooga it was provided:

" 'Article XI. *Stopping, standing and Parking.* Section 88. (a) No person shall stop, stand or park a vehicle except when necessary to avoid conflict with other traffic or in compliance with law and the directions of a police officer or traffic-control device, in any of the following places: * * * (3) Within an intersec-

tion; \* \* \* (5) On a cross-walk; (6) Within 20 feet of a cross-walk at an intersection;'

" 'Article I, Sub-Division II, Section 13. *Crosswalk.* (a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalk on opposite sides of the highway measured from the curbs, or in the absence of curbs from the edges of the traversable roadway.'

" 'Article I, Sub-division I, Section 7. (a) *Stop.* When required means complete cessation of movement.'

" ' *Stop, stopping or standing.* When prohibited means any stopping or standing of a vehicle whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal.'

" 'Article XVI. Section 121. Pedestrians' right-of-way in cross-walks. (a) When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a cross-walk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger.'

" '(c) Whenever any vehicle is stopped at a marked cross-walk or at any unmarked cross-walk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the

rear shall not overtake and pass such stopped vehicle.' "

"It was also charged that the violation of such ordinances concurred to bring about plaintiffs' injuries.

"Defendants were required to and did plead specially, to which there was a replication saying that under the aforesaid ordinance there were the following provisions:

" 'Article XIV. *Stopping for loading or unloading only.* Section 107. *City Traffic Engineer to designate curb loading zones.* The City Traffic Engineer is hereby authorized to determine the location of passenger and freight curb loading zones and shall place and maintain appropriate signs indicating the same and stating the hours during which the provisions of this Section are applicable.

" 'Section 108. *Standing in passenger curb loading zone.* No person shall stop, stand, or park a vehicle for any purpose or period of time other than for the expeditious loading or unloading of passengers in any place marked as a passenger curb loading zone during hours when the regulations applicable to such curb loading zone are effective, and then only for a period not to exceed three (3) minutes.

" 'Section 110. *City Traffic Engineer to designate public carrier stops and stands.* The City Traffic Engineer is hereby authorized and required to establish bus stops, bus stands, taxicab stands and stands for other passenger common-carrier motor vehicles on such public streets in such places and in such number as he shall determine to be of the greatest benefit and convenience to the public, and every such bus stop, bus

stand, taxicab stand, or other stand shall be designated by appropriate signs.

" 'Section 111. *Stopping, standing, and parking of busses regulated.* (a) The operator of a bus shall not stand or park such vehicle upon any street at any place other than at a bus stand so designated as provided herein.

" '(b) The operator of a bus shall not stop such vehicle upon any street at any place for the purpose of loading or unloading passengers or their baggage other than at a bus stop, bus stand, or passenger loading zone so designated as provided herein except in case of an emergency.'

"As to the latter it was averred there was no sign at the intersection designating where the Coach Lines bus should stop; and that if such location had been designated then the Coach Lines had violated the ordinance by stopping longer than three minutes.

"Defendants also plead, inter alia, that Betty was guilty of proximate contributory negligence which would bar a recovery.

"After all the proof was in the trial judge sustained Mrs. Cope's motion for a directed verdict only as to that part of the statutory count in Article XVI, Sec. 121(c) previously quoted which provides that when any vehicle is stopped at an intersection to permit a pedestrian to pass, the driver of any other vehicle approaching from the rear shall not overtake and pass such vehicle. We have previously mentioned this was a four lane street; two east and two west.

"There are three assignments of error. The first and third relate to Mrs. Cope; the second to the Coach Lines.

"We shall first take up the assignments relating to Mrs. Cope.

"The first is that plaintiffs omtion for new trials should have been sustained because 'the verdict of the jury was contrary to the weight and preponderance of the evidence * * * which was to the effect that plaintiff Betty Woody was not guilty of contributory negligence.'

"This assignment is not sufficient in law. Our only function is to see if there was any material evidence to support the finding of the jury. *Rose [& Co.] vs. Snyder,* 185 Tenn. 499 at [page] 508 [206 S.W.2d 897, at page 901]; *McAmis vs. Carlisle,* [42] Tenn. App. [195], 300 S.W.2d 59. Citations could be multiplied.

"Under the evidence accepted by the jury, (1) Mrs. Cope was not guilty of any negligence, but was driving her automobile at a legal speed in the lane south of the one in which the bus had stopped, and did all within her power to avoid the accident when she (Betty) came out in the street, or (2) that Betty was guilty of proximate contributory negligence in that she stopped at the left front end of the bus and looked back east (the direction from which Mrs. Cope was approaching and did not see her) and then ran out in front of this approaching car; that when she did so, Mrs. Cope swerved to her left, causing the point of impact to be on the back end of her hood near the front door, leaving traces of bubble gum on plaintiff's mouth.

"We now pass to the third assignment which charges that Mrs. Cope violated 121 (c) of the ordinance pre-

viously quoted, in that she was passing a bus stopped in the lane to her right.

"In so holding the court said:

" 'The Court feels that you have to construe these statutes in a way to give them some sensible meaning. If we follow the plaintiff's argument every time a bus pulled over to a corner or stopped against the curb, all other traffic on the street would have to stop and wait to find out whether any pedestrian is going to come across.

" 'The reason the bus pulls against the curbing and parks, just as any other car would, is to let passengers on or off, and we would be in a position on all four-lane highways of making all traffic come to a stop until that bus pulled out in order to find out whether or not it was in that bus driver's mind to let a pedestrian walk across the street.

" 'Sustain the motion.' "

"We agree with that holding. It would be utter folly to hold that it was the legislative intent to have all traffic stopped on a multilaned road when one vehicle stopped. We think the intent was to regulate traffic on two lane streets so that no driver would swerve out into the path of a vehicle approaching from the opposite direction.

"Consequently, it results that the assignments of error directed at the case against Mrs. Cope are overruled.

"This brings us to the second assignment relating to the preemptory instructions granted the Southern Coach Lines. For reasons hereinafter stated the majority

thinks the case should have gone to the jury because of the violation of the ordinance in stopping the bus within 20 feet of the cross walk. Judge Hale, for reasons set forth in a separate dissenting opinion, would affirm the action of the Court in directing a verdict for the Coach Lines.

"In discussing this question, counsel for the Coach Lines say:

" 'The obvious purpose of this ordinance is to prevent ordinary private vehicles from blocking the view of other motorists entering the intersection, and, secondly, if at all, to keep the way clear for pedestrians. This ordinance does not apply to a public utility such as the bus company which has stops at many corners throughout the city, almost invariably within (20) feet of the crosswalks. But, assuming that this ordinance did apply to defendant, still defendant's violation of it was not the proximate cause of plaintiff's injuries. By her own testimony, plaintiff Betty Woody states that she went to the edge of the bus, a position of safety, and looked for herself before proceeding into East Third Street. The bus then, regardless of its position, did not block plaintiff's view and therefore did not proximately cause nor even proximately contribute to plaintiff's injuries.' "

"We think counsel's statement of the purpose of the ordinance is correct as far as it goes but that it fails to state its whole purpose.

"First, we find nothing in the ordinance exempting public carriers from its provision and there occurs to us no reason why a bus could not stop 20 feet from cross walks for the purpose of discharging or taking on

passengers, at least in the absence of a proper designation by municipal authority within 20 feet of the cross walk and no such designation is shown by the record. And, it seems to us defendant's rejoinder plea tacitly concedes that it was not required to stop within this space but continued to do so after passage of the ordinance because it had theretofore stopped at certain places within this space.

■ ''Secondly, we think the purpose of the ordinance was not only to afford motorists a better view of the cross walk, as conceded, but also to afford persons on the cross walk a better view of approaching vehicles.

''A similar ordinance was before the Court in *Milbury, by next friend v. Turner Centre System* [274 Mass. 358], 174 N.E. 471 [73 A.L.R. 1070], involving injury to a pedestrian passing around a truck parked too near the cross walk in violation of the ordinance where the pedestrian was struck by another vehicle. In rejecting the insistence that the illegal parking of the truck was not the proximate cause of the accident and in discussing the purpose of the ordinance the Supreme Court of Massachusetts said:

'' 'In the case before us the ordinance related directly to the safety of persons using and passing street corners and sought to keep them clear in order that those using either the sidewalk or the way for vehicles might see the existing traffic in an intersecting street as well as in the way that they were using and act with full knowledge of conditions in the ways so that a violation would indicate negligent conduct. A jury could find that leaving a solid truck 10 or 11 feet high close to a corner, cutting off the view of an intersecting

street and with the hood blocking from 3 to 5 feet of space generally used as the sidewalk and approach to the street crossing, was a negligent act. * * * A collision might well be found to be not something unusual and unlikely to happen as a result of such blocking of a corner as here took place—something only remotely and slightly probable—but, rather, a consequence naturally to be expected.' "

See to the same effect *Winsky v. De Mandel,* 204 Cal. 107, 266 Pac. 534 and see also *Hartford v. Silverman* [109 Cal.App. 587], 293 Pac. 660.

■ "We think the case against Southern Coach Lines should have been presented to the jury on the question of negligence and proximate cause, particularly, on the question whether the stopping of the bus in violation of the ordinance created a condition that was a proximate or a contributing cause of the accident. *Brown v. Wallace,* 15 Tenn.App. 187; 60 C.J.S. [Motor Vehicles sec. 330, pp.] 770, 771 and cases cited under footnote 47; 73 A.L.R. 1070, Anno. page 1074; 5A Am.Jur. 479.

"In the authority last cited it is said:

" 'Parking in violation of an ordinance within the prohibited distance from a crossing is generally held to be negligence, or evidence of negligence which requires submission of the issues to the jury. * * *'

"We have dealt with this question at some length because of its importance and because this is the second time the same or very similar question has been presented to this court.

"In *Hart v. Call, Admr.,* Hamilton Law decided December 4, 1939, there was involved the liability of the

operator of an illegally parked school bus for the death of a child who passed in front of the bus and was struck by another vehicle moving, as in this case, in the direction the parked bus was headed. This court sustained a verdict in favor of the child's administrator. Certiorari was granted and the case affirmed by the Supreme Court June 29, 1940.

"We are also of opinion the quesiton of contributory negligence was for the jury. Plaintiff Betty Woody testified that she looked for traffic from the east before stepping into the second lane. The complaint is, as we understand, that she did not again look in that direction before reaching the center line. There is testimony that the Cope car came from the first lane next to the curb and drove around the rear of the bus into the second lane, thus accounting for the fact that the plaintiff failed to see it when she looked. We think it was for the jury to say whether an ordinarily prudent person would have anticipated that a car might suddenly appear from behind the bus or whether, in view of the bus driver's signal to cross, the plaintiff should have given her entire attention to traffic moving in the second lane, rather than look for east bound traffic which she might expect to encounter when she reached the center line.

"It is proper to say at this point that the finding of the jury in favor of Hester Cope does not require us to assume that the jury found plaintiff guilty of contributory negligence. There was also evidence that Mrs. Cope was guilty of no negligence and it may be that the jury based its verdict on such evidence. Since the Coach Lines was not before the Court when the verdict was rendered it is not entitled to the presumption arsing under

T.C.A. sec. 20-1318 that the verdict embraces a finding on every issue in the case against the plaintiff. This exact question is covered and controlled by *Hammons v. Walker Hauling Company,* 196 Tenn., 26 [263 S.W.2d 753], where Mr. Justice Tomlinson dealt with the question at length.

"Reversed and remanded for a trial as to the Southern Coach Lines. Accrued costs below and costs of appeal will be equally divided."