Milda **DABOL**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18935.

United States Court of Appeals
Ninth Circuit.

Sept. 9, 1964.

Rehearing Denied En Banc
Oct. 9, 1964.

Vernon R. Pearson, Davies, Pearson, Anderson & Pearson, Tacoma, Wash., for appellant.

Brockman Adams, U. S. Atty., Charles W. Billinghurst, Asst. U. S. Atty., Tacoma, Wash., for appellee.

Before MADDEN, Judge of the Court of Claims, and BROWNING and DUNIWAY, Circuit Judges.

BROWNING, Circuit Judge.

Mrs. Dabol appeals from an adverse judgment in an action under the Federal Tort Claims Act. 28 U.S.C.A. §§ 1346(b), 1402(b), 2671–2680.

The district court found that while crossing a street in a marked crosswalk not controlled by a traffic signal, Mrs. Dabol passed in front of a vehicle stopped halfway across the crosswalk in the first lane, and, without looking to determine whether traffic was approaching, walked into the side of a slow-moving Air Force vehicle in the next lane. The court concluded that "Milda Dabol was guilty of contributory negligence as a matter of fact and also as a matter of law in walking around a stationary vehicle and into the side of the vehicle driven by Sgt. Craig in that she made no attempt to observe and see Sgt. Craig's vehicle when under the circumstances a reasonably prudent person using ordinary care would have seen and observed the military vehicle."

We do not understand Mrs. Dabol to challenge the district court's findings as

to the physical facts. Her argument is that under the provisions of section 46.-60.250 of the Revised Code of Washington, Sgt. Craig was negligent as a matter of law in passing a vehicle which had stopped to permit her to cross the street,[1] and her conduct could not absolve the United States from liability for her resulting injuries.

Omitting an initial provision not applicable here, R.C.W. § 46.60.250 is set out below. For ease of reference we have added paragraph numbers and italicized the particular portions of the statute upon which Mrs. Dabol relies:

"*Pedestrian traffic regulations.* [1] * * * Where traffic control signals are not in place or not in operation, the operator of a vehicle shall yield the right of way, slowing down or stopping, if need be, to so yield, to any pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, *but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. This provision shall not apply under the conditions stated hereinafter.*

"[2] *Whenever any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the operator of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle.*

"[3] Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.

"[4] Any pedestrian crossing a roadway at a point where a pedestrian tunnel or overhead pedestrian crossing has been provided shall yield the right of way to all vehicles upon the roadway.

"[5] Between adjacent intersections at which traffic control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk."

The facts found by the district court brought Mrs. Dabol within the conditions described in the first portion of the initial sentence of paragraph 1 of the statute, and she was therefore given the right of way over the Air Force vehicle. This does not mean, however, that Mrs. Dabol was relieved of the duty to exercise reasonable care for her own safety. In Williams v. Brockman, 30 Wash.2d 734, 193 P.2d 863, 867 (1948), the Washington Supreme Court said:

"A pedestrian must use the right of way accorded him by statute at a recognized street crossing, with due care for his own safety. By his negligence, a pedestrian may subject himself to a ruling that he was guilty of contributory negligence as a matter of law, or he may by his conduct justify a finding by the trier of the fact that he was guilty of contributory negligence as a matter of fact. Those are questions which must be determined in each individual case as it arises." [2]

This is the majority view.[3]

1. But see note 6.

2. Quoting Miller v. Edwards, 25 Wash.2d 635, 644, 171 P.2d 821, 826 (1946). See also Beireis v. Leslie, 35 Wash.2d 554, 560, 214 P.2d 194, 197 (1950); Hagstrom v. Limbeck, 15 Wash.2d 399, 404, 130 P.2d 895, 898 (1942); Estill v. Berry, 193 Wash. 10, 16–19, 74 P.2d 482, 484–486 (1937); Hamblet v. Soderburg, 189 Wash. 449, 452, 65 P.2d 1267 (1937).

3. Where, as in this case, the action is based upon defendant's failure to satisfy the standard of conduct fixed by a criminal statute, contributory negligence is ordinarily a defense, unless the statute is "so clearly intended to protect a par-

Furthermore, unless the provisions of R.C.W. § 46.60.250 relied upon by Mrs. Dabol dictate a different result, the finding that Mrs. Dabol passed the stopped vehicle and walked into the adjacent traffic lane with no attempt to observe approaching traffic probably required a holding that she was guilty of negligence as a matter of law,[4] at least where, as here, the court also found that Mrs. Dabol walked into the side of appellee's slowly moving vehicle.[5] In any event, absent a special statutory immunity, it can hardly be denied that the physical facts found by the district court were sufficient to support the court's conclusion that Mrs. Dabol was negligent as a matter of fact.

We therefore turn to Mrs. Dabol's contention that the case is altered by the portions of R.C.W. § 46.60.250 which we have italicized above.

As we have seen, the first sentence of paragraph 1 provides that where there are no operating traffic signals, a vehicle must yield the right of way to a pedestrian crossing in a crosswalk, but the pedestrian shall not move suddenly from a place of safety into the path of a vehicle so close that the driver cannot yield. This provision, the statute adds, "shall not apply under the conditions stated hereinafter." Paragraph 2, immediately following, provides that when a vehicle is stopped to permit a pedestrian to cross, vehicles approaching the stopped vehicle from the rear shall not pass; this, Mrs. Dabol contends, was the present case.[6] Mrs. Dabol's argument is that it follows from the juxtaposition of these provi-

ticular class of persons against their own inability to protect themselves, that the policy of the legislature is interpreted to mean even that such defenses are not available." Prosser on Torts 161 (2d ed. 1955). "Child labor acts, factory acts for the protection of workmen, or railway fencing or fire statutes" (Id. at 289) fall in the latter category. See also 2 Harper and James, The Law of Torts § 22.9 (1956); Restatement, Torts § 483 (1934). But no authority has suggested that this is true of statutes regulating the rights and obligations of pedestrians and motorists. Prosser, Contributory Negligence as Defense to Violation of Statute, 32 Minn.L.Rev. 105, 114 (1948). Decisions in accord with the Washington view are collected in 2A Blashfield's Cyclopedia of Automobile Law & Practice § 1272 at 174, § 1431.5 at 312 (1951).

4. See, e. g., Hamblet v. Soderburg, 189 Wash. 449, 452, 65 P.2d 1267, 1269 (1937); "Where, as here, no attempt at observation is made and especially where one steps out from behind an obstructing object, the pedestrian is guilty of negligence as a matter of law."

5. In Ogilvie v. Hong, 175 Wash. 209, 214, 27 P.2d 141, 143 (1933), the Washington Supreme Court approved the following instructions:
"You are instructed that if you find that decedent walked into or against the side of the defendant Hong's car, then the decedent was guilty of negligence as a matter of law * * *.

See also Williams v. Brockman, 30 Wash.2d 734, 740, 193 P.2d 863, 866 (1948); Hagstrom v. Limbeck, 15 Wash. 2d 399, 404, 130 P.2d 895, 898 (1942), and Estill v. Berry, 193 Wash. 10, 20, 74 P.2d 482, 486 (1937).

6. We proceed on the assumption that this is so, though no finding to this effect was made by the district court, and the findings which were made suggest the contrary. The district court found that the stationary vehicle had stopped in the middle of the cross-walk in a line of traffic halted by a traffic signal at the next intersection. The Washington Supreme Court has held that the provision of R.C.W. § 46.60.250 relied upon by plaintiff does not apply unless the circumstances are such that the driver of the approaching vehicle knew or should have known that the stationary vehicle was stopped to permit a pedestrian to pass. Rettig v. Coca-Cola Bottling Co., 22 Wash.2d 572, 576, 156 P.2d 914, 917 (1945). To the same effect see Woody v. Cope, 207 Tenn. 78, 338 S.W.2d 551, 555 (1960). Under an identical statute, the Supreme Court of Minnesota held the provision inapplicable where the stationary vehicle was stopped by a traffic light. Kollodge v. F. & L. Appliances, Inc., 248 Minn. 357, 80 N.W.2d 62, 65 (1956).
We note also that in Woody v. Cope, supra, the Supreme Court of Tennessee held, as an alternate ground, that a provision identical with paragraph 2 of R.C.W. § 46.60.250 was applicable only to

sions that when a vehicle has stopped to permit a pedestrian to pass, the prohibition in paragraph 1 against a pedestrian's moving into the path of an approaching vehicle from a place of safety "shall not apply," and therefore no duty is imposed upon the pedestrian to observe oncoming traffic or otherwise act to protect himself. If the approaching vehicle violates its duty to stop, Mrs. Dabol argues, the pedestrian's acts or omissions cannot affect liability.

1. The portion of R.C.W. § 46.60.250 involved here is identical with sections 88 and 89 of the Uniform Vehicle Code of 1944 [7]—with a single exception. The last sentence of the first paragraph in section 88 of the Uniform Vehicle Code

states that the provisions of that paragraph "shall not apply under the conditions stated in section 89(b)." Section 89(b) is identical to paragraph 4 of R.C.W. § 46.60.250. Thus, under the Uniform Vehicle Code, it is made explicitly clear that the provisions of paragraph 1 with respect to pedestrian privileges and duties in crosswalks not controlled by traffic signals are inapplicable *only* when the pedestrian crosses the roadway at a point at which a tunnel or overpass was available for his use. This is also true of substantially all comparable state statutes.[8]

The exclusionary clause in paragraph 1 of the comparable Minnesota statute (Minn.Stat.Ann. § 169.21(2)), like the

---

two-lane highways. The court said: "It would be utter folly to hold that it was the legislative intent to have all traffic stopped on a multilaned road when one vehicle stopped. We think the intent was to regulate traffic on two lane streets so that no driver would swerve out into the path of a vehicle approaching from the opposite direction." 338 S.W.2d at 555–556. This aspect of the decision is criticized in 28 Tenn.L.Rev. 425 (1961).

In any event, we assume for purposes of the present case that the statute applied and that Sgt. Craig violated its provisions and was negligent as a matter of law.

7. Secs. 88 and 89 of the Uniform Vehicle Code of 1944 read as follows:
"Sec. 88. *Pedestrians' right-of-way in crosswalks.*—(a) When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a cross walk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. This provision shall not apply under the conditions stated in section 89(b).
"(b) Whenever any vehicle is stopped at a marked cross walk or at any un-

marked cross walk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle.
"Sec. 89. *Crossing at other than cross walks.*—(a) Every pedestrian crossing a roadway at a point other than within a marked cross walk or within an unmarked cross walk at an intersection shall yield the right of way to all vehicles upon the roadway.
"(b) Any pedestrian crossing a roadway at a point where a pedestrian tunnel or overhead pedestrian crossing has been provided shall yield the right-of way to all vehicles upon the roadway.
"(c) Between adjacent intersections at which traffic-control signals are in operation pedestrians shall not cross at any place except in a marked cross walk."

8. Code of Ala., tit. 36, § 58(15); Ariz. Rev.Stat. § 28–792 (1955); Ga.Code Ann. § 68–1656 (1957); Idaho Code § 49–733 (1947); Burns Ind.Stat. § 47–2032 (1952 Replacement); LSA–Rev. Stat. § 32:212; Rev.Code of Mont. § 32–2177 (1947); Nev.Rev.Stat. § 484.-176; N.M.Stat.Ann. § 64–18–33 (1953); N.Y.Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71, § 1151; N.D.Century Code Ann. § 39–10–28; Okla.Stat.Ann., tit. 47, § 11–502; Gen.Laws of R.I. § 31–18–3 (1956); Code of Laws of S.C. § 46–433 (1962); Tenn.Code Ann. § 59–834 (1956); Vern.Ann.Tex.Civ.Stat. art. 6701d, § 77; Utah Code Ann. § 41–

exclusionary clause in R.C.W. § 46.60.250, is not expressly limited to the situation described in paragraph 4. Thus, the Minnesota exclusionary clause, like that in the Washington statute, if read literally would render paragraph 1 inapplicable to paragraph 2. However, the Minnesota Supreme Court has held that the literal language of the exclusionary clause is to be read as if limited to paragraph 4 in accordance with the Uniform Vehicle Act, and that it therefore does not apply to paragraph 2. Kollodge v. F. & L. Appliances, Inc., 248 Minn. 357, 80 N.W.2d 62 (1956).

2. This result seems proper, not only by analogy to the Uniform Vehicle Act, but also because the exclusionary clause of paragraph 1 can be applied with reason only to paragraph 4.

Mrs. Dabol has unjustifiably dismembered the "provision" which the exclusionary clause of paragraph 1 states "shall not apply" in the instances thereafter enumerated. The first sentence of paragraph 1, as we have seen, provides

that the pedestrian shall have the right of way when crossing in a crosswalk where there is no traffic signal, but that he is not to move suddenly into the path of an approaching vehicle. The purpose of this provision is to grant a right of way to the pedestrian in the situation described—albeit a qualified one. The exclusionary clause applies to the grant of pedestrian right of way, qualified as it is; the statutory language affords no basis for applying the exclusionary clause to the qualification alone.[9]

The reason for making the grant of pedestrian right of way in paragraph 1 inapplicable to paragraph 4 is clear. Paragraph 4 requires the pedestrian to yield the right of way when crossing on the highway, at a point where a tunnel or overhead crossing is available for his use. If a crosswalk not controlled by a signal were also available at such a point, paragraph 1, if left applicable, would grant a right of way to a pedestrian crossing in the crosswalk. The exclusionary clause makes paragraph 1 inapplica-

6–78 (1953); W.Va.Code Ann. § 1721 (368); Wyo.Stat. § 31–158 (1957). Exceptions, in addition to R.C.W. § 46.60.-250 are Minn.Stat.Ann. § 169.21(2); N. H.Rev.Stat. § 262–A:33 (1955).

9. That the intent was to exclude the grant of pedestrian right of way in subsequent situations described in the statute is made expressly clear in the 1962 revision of the Uniform Vehicle Code by stating the grant and the qualification in separate paragraphs and making the exclusionary clause applicable only to the former. Sec. 11–502 of the Uniform Vehicle Code of 1962 reads as follows:

"Sec. 11–502—Pedestrians' right of way in cross walks

"(a) When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a cross walk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger.

"(b) No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.

"(c) Paragraph (a) shall not apply under the conditions stated in section 11–503(b).

"(d) Whenever any vehicle is stopped at a marked crosswalk or at any unmarked cross walk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle."

Sec. 11–503(b) referred to in Sec. 11–502(c), reads:

"Any pedestrian crossing a roadway at a point where a pedestrian tunnel or overhead pedestrian crossing has been provided shall yield the right of way to all vehicles upon the roadway." The provisions of the Nevada, New Mexico, North Dakota, Oklahoma, Tennessee, and Wyoming statutes are identical with those of the 1962 revision of the Uniform Vehicle Act. See note 8.

ble to paragraph 4 so that if a pedestrian chooses to use the crosswalk instead of the alternative means of crossing provided for his use (which would eliminate any possible conflict with vehicular traffic), he must yield the right of way to the vehicular traffic.

Since paragraph 1 applies only when a pedestrian is crossing in a crosswalk, the clause rendering paragraph 1 inapplicable to subsequent provisions would serve no purpose with respect to paragraphs 3 and 5, which by their express terms apply only where there is no crosswalk.

Moreover, read as appellant reads it, the exclusionary clause in paragraph 1 would produce an absurd result as to all three of these paragraphs: a pedestrian required by paragraph 3 to yield to approaching vehicles because he is crossing elsewhere than at a crosswalk would nonetheless be free to walk or run into the path of an approaching vehicle; and a pedestrian denied the right of way by paragraph 4 because a tunnel or overpass was provided for his use, and by paragraph 5 because he was crossing where there was no crosswalk at a point between intersections controlled by traffic lights, could act in the same fashion. And although a motorist is expressly given the right of way in all three situations, he could not assert as a defense the grossest failure of a pedestrian to yield that right of way.

It is clear that the exclusionary clause in paragraph 1, properly read, cannot apply to paragraph 2. If the pedestrian right of way granted by paragraph 1 did not apply in the situation described in paragraph 2, an impasse would be created: an approaching vehicle could not pass a vehicle stopped to permit a pedestrian to cross in a crosswalk, but the pedestrian would have no right of way.

3. We may add that it seems reasonable to suppose that if the Washington legislature had wished to exclude contributory negligence as a defense to the claim of a pedestrian under paragraph 2, it would have employed a more direct means of saying so than that of negating a prohibition imposed upon the pedestrian in a different set of circumstances.

4. Finally, even if the language of the statute were given the effect contended for by Mrs. Dabol, it would not wholly exclude the defense of contributory negligence, and, indeed, would not reach Mrs. Dabol's own case. The prohibition which would be excluded is simply that the pedestrian shall not suddenly leave a place of safety and enter the path of a vehicle approaching so closely that the driver cannot yield. The maximum effect of the exclusionary clause would be to permit the pedestrian to do under conditions described in subsequent paragraphs what he was prohibited from doing in the situation described in paragraph 1. However, dashing from a place of safety into the path of an approaching vehicle is not the only conduct of a pedestrian which may constitute negligence. The Washington Supreme Court has treated the failure of a pedestrian to maintain a reasonable lookout for approaching vehicles while crossing in a crosswalk as contributory negligence, even though it did not also appear that the pedestrian had suddenly moved into a vehicle's path from a curb or other place of safety.[10] The trial court did not find Mrs. Dabol negligent because she suddenly left a place of safety and projected herself into the path of appellee's vehicle, but rather because "she made no attempt to observe and see Sgt. Craig's vehicle when under the circumstances a reason-

---

10. James v. Ellis, 44 Wash.2d 599, 603, 269 P.2d 573, 575 (1954). The same rule is applied in other jurisdictions having similar statutes. See, e. g., Terry v. Biswell, 66 N.M. 201, 345 P.2d 217, 219 (1959) [N.M.Stat.Ann. § 64–18–33 (1953)]; Green v. Tingle, 92 R.I. 393, 169 A.2d 373, 375, 908 (1961) [Gen.Laws of R.I. § 31–18–3 (1956)]; Lofland v. Jackson, 237 S.W.2d 785, 789 (Tex.Civ.App.1950) [Vern.Ann.Tex.Civ.Stat. Art. 6701d, § 77]; Callahan v. Van Galder, 3 Wis.2d 654, 89 N.W.2d 210, 213 (1958) [Wis.Stat.Ann. § 85.44(1)].

ably prudent person using ordinary care would have seen and observed the military vehicle."

Affirmed.

MADDEN, Judge (dissenting).

I think the court's decision is wrong, and I dissent.

The Federal Tort Claims Act provides that the applicable law is the law of the state in which the alleged tort occurred. In this case, the unfortunate incident occurred in the State of Washington. The court has, in effect, applied the Uniform Motor Vehicle Code of 1944, a proposed model statute tendered to all the states but which, so far as I know, has not been adopted in any state without some modification of its provision, and certainly had not been adopted by the State of Washington without an important modification directly applicable to this case.

It is relevant, I think, to note that the Government in its brief in support of the judgment of the District Court does not take the position that the Uniform Motor Vehicle Code is the "supreme law of the land, * * * anything in the * * * laws of any State to the contrary notwithstanding." Indeed, the Government's brief does not even make passing mention of the Uniform Motor Vehicle Code, and I think that was a correct estimate of its relevancy to this case.

The Washington statute is quoted in the opinion of the court. It provides that in a situation such as that involved in this case, the pedestrian shall have the right of way in a cross-walk, but no pedestrian shall so suddenly put himself in the path of a vehicle that it is impossible for the driver to yield the right of way. In short, a pedestrian who does that will have only himself to blame for his injury. Following this "but" language is the sentence:

"This provision shall not apply under the conditions stated hereinafter."

Immediately *thereinafter* is this paragraph:

"Whenever any vehicle is stopped at a marked crosswalk * * * to permit a pedestrian to cross the roadway, the operator of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle."

In the ordinary situation in which there is no obstruction of the vision of the pedestrian, it is proper that he should be required to use that vision to assure his own safety. But in the situation covered by the paragraph quoted just above, the Washington Legislature recognized that neither the pedestrian nor the driver of the vehicle approaching from the rear of the stopped vehicle can see the other. The Legislature concluded that if accidents were to be prevented in such situations, a hard and fast rule was required, and it made the rule that the driver approaching from the rear "shall not overtake and pass such stopped vehicle." The rule was made to prevent injuries to pedestrians in such situations. In the instant case the defendant's driver violated the rule and, because he violated it, the plaintiff was seriously hurt.

The District Court made a finding:

That Sergeant Allen E. Craig was guilty of no negligence at the time and place mentioned above.

This finding, which passeth understanding, is quite properly discarded by this court, which says, "In any event, we assume for purposes of the present case that the statute applied and that Sgt. Craig violated its provisions and was negligent as a matter of law." It seems to me that the District Court's erroneous finding that Sgt. Craig was innocent of fault quite naturally led that court into its conclusion that the conduct of the plaintiff, Mrs. Dabol, was the sole legal cause of the accident. The court makes its finding about her conduct in the language of *contributory negligence*, which

is illogical since it follows a finding that the driver was guilty of *no negligence*.

However, the real issue in the case is whether the Washington statute required that Mrs. Dabol, having waited a considerable time for a break in the automobile traffic which would leave the crosswalk available for her, and having properly committed herself to the crossing, and having passed two automobiles, one parked in the curb lane and one stopped to allow her to pass, could assume that she might, as she did, devote her attention to what the situation would be on the other half of the street, which was a few feet ahead of her, and in which she did not yet have the right of way, or whether she must go peeking around the corner of the stopped automobile in anticipation that a driver, in plain violation of the law, would collide with her if she proceeded straight ahead.

I think the Washington statute has given us the answer to that issue in plain language. In the first paragraph it tells us that the pedestrian, in certain circumstances, must not suddenly get in the path of an automobile which has no real opportunity to stop. Then it says that the provision relating to the negligence of the pedestrian shall not apply in the situation in which the law requires the potentially dangerous automobile to stop, and in which neither the pedestrian nor the driver can see the other, and in which there is, in fact, a pedestrian, though the driver cannot see him. Is there something so fundamentally fair and right about the common law of contributory negligence that a legislature cannot, even by plain language, abolish it in clearly defined situations? When legislatures abolished certain common law defenses, including contributory negligence, in certain labor situations—among others, injuries to children in factories— there were anguished cries that these changes in the law spelled the doom of free enterprise.

In all humanity, why could not a legislator of the State of Washington stand at a cross-walk on a busy traffic street and take notice of what he saw: the old and the young, the half-blind and the half-deaf, the half-drunk and the sober, the timid and inexperienced and confused, who get down town only once in six months, and the sophisticated down-town worker. If the legislator chose to propose a law which recognized the inequity of holding these nondescript pedestrians to the standard of the ordinary reasonable licensed automobile driver who sits in the safety of his vehicle and violates the law, is it for a court to frustrate this legislator's experiment in humanity by looking far afield for reasons to nullify the statute?

The court says that the Uniform Motor Vehicle Act is better written in that it specifically provides that the pedestrian's right of way on a highway shall not apply where there is a tunnel or an overhead pedestrian crossing. That is logical, but completely irrelevant. The Washington statute says that the contributory negligence doctrine shall not apply when the pedestrian passes in front of a stopped automobile behind which is an automobile which the law has ordered to stop but which may disregard the law.

The court says, in effect, that since there are several paragraphs of the statute which follow the sentence, "This provision shall not apply under the conditions stated hereinafter," and since, as to some of those paragraphs, the language of the first paragraph would not be logically applicable anyway, therefore the non-applicability statement cannot be applied, even as to the *immediately* following paragraph as to which the non-applicability statement is completely logical. I think the court's interpretation of the statute indicates a deplorable tendency to meddle in and frustrate the purpose of legislators. What seems to me plain enough is that, whatever the Uniform Motor Vehicle Act may have said, and meant by what it said, the Washington Legislature when it referred to "this provision" meant the "but no pedestrian, etc." provision and nothing more, and that when it spoke of "the conditions stated hereinafter," it meant the conditions stated first thereinafter. The statute

should be so interpreted *ut res valeat magis quam pereat.* The numerous Washington cases cited by the court have nothing to do with this case. Of course, a pedestrian may, in many situations, be barred from recovery by his contributory negligence. But the Washington courts have not had occasion to interpret and apply the statutory provisions upon which this case depends. In the case of Allen v. Hart, 32 Wash.2d 173, 201 P.2d 145, the court said:

> "There are few rights of way known to the law that are as nearly absolute as that given a pedestrian on a crosswalk at an intersection where there are no traffic signals in place or in operation under the statute * * * and the city ordinance here applicable, both of which require the operator of a vehicle to yield the right of way to such pedestrians, ' * * * *slowing down or stopping, if need be to so yield.'* "

The case from which the foregoing quotation was taken did not involve the statute which is here under construction. I think it is particularly inappropriate for a federal court, in a suit against the federal Government, to so construe a state statute not yet construed by the courts of the state, as to violate the spirit and attitude which the courts of the state have shown toward related statutes.

On Petition for Rehearing En Banc

Before MADDEN, Judge of the Court of Claims, and BROWNING and DUNIWAY, Circuit Judges.

The petition for rehearing en banc is denied. The petition calls our attention to the case of Daley v. Stephens, 64 Wash.2d ——, 394 P.2d 801, decided July 30, 1964, disapproving certain language in Rettig v. Coca-Cola Bottling Co., 22 Wash.2d 572, 156 P.2d 914 (1945). At most, Daley is relevant to the issue of Sgt. Craig's negligence, which we assumed in Mrs. Dabol's favor. See note 6, page 165.

MADDEN, J., would grant the petition.