Harvey Rayvon BYERLY, Charles William Long, Homer Lee Cox, and Davidson County, Appellees,

v.

Lewis Jackson SHELL and Joncie W. Absher, Appellants.

No. 8718.

United States Court of Appeals Fourth Circuit.

Argued Sept. 24, 1962.

Decided Nov. 8, 1962.

As Amended on Denial of Rehearing Dec. 19, 1962.

Kyle Hayes, North Wilkesboro, N. C. (Hayes & Hayes, North Wilkesboro, N. C., on brief), for appellants.

John Haworth and John C. Riggs, High Point, N. C. (Haworth, Riggs, Kuhn & Haworth, High Point, N. C., on brief), for appellee, Harvey Rayvon Byerly.

W. F. Maready and R. M. Stockton, Jr., Winston-Salem, N. C. (Hudson, Ferrell, Petree, Stockton, Stockton & Robinson, Winston-Salem, N. C., on brief), for

appellees, Charles William Long, Homer Lee Cox, and Davidson County.

Before SOPER and HAYNSWORTH, Circuit Judges, and JOHN PAUL, District Judge.

SOPER, Circuit Judge.

This appeal was taken by one group of defendants in a case involving a collision between an automobile and a truck in order to protect their right of contribution under the North Carolina statutes against another group of defendants who were dismissed by the District Judge at the end of the plaintiff's evidence. The right of the plaintiff to recover against the appellant defendants is conceded. Appellant's contention is that the accident was caused by the concurrent negligence of all the defendants; and, hence, all of them should be held liable with the right of contribution between them.

On June 20, 1961, H. R. Byerly, the plaintiff, who was then a prisoner in the custody of the Sheriff of Davidson County, N. C., was injured when the Sheriff's automobile in which he was riding collided with a truck as the Sheriff's car was attempting to pass the truck at a road intersection on a 4-lane divided highway within the city limits of Greensboro, N. C. Byerly entered suit in the District Court against the Sheriff, the driver of the Sheriff's car, and Davidson County (Sheriff defendants) and also against J. W. Absher, the owner, and L. J. Shell, the driver, of the truck (truck defendants), as co-defendants. Byerly asserted that the collision was caused by the concurrent negligence of the drivers of the two vehicles. Jurisdiction was based on diversity of citizenship. Issue was joined, and the case was tried before a jury. At the end of the plaintiff's evidence, the District Judge dismissed the case as to the Sheriff defendants on the ground that there was no evidence that the Sheriff's car had been driven negligently. The other group of defendants, who were responsible for the operation of the truck, objected to the motion to dismiss the case as to the Sheriff and his

associates. In their argument, they contended that the plaintiff in his evidence had made out a prima facie case against the Sheriff defendants and also called attention to the fact that the truck defendants had had no opportunity to present evidence tending to show that the Sheriff defendants were guilty of negligence contributing to the accident; and, hence, the Sheriff defendants should not be exonerated by the court, but the case as to them should be submitted to the jury. It was pointed out that if this action were not taken, the truck defendants would be deprived of the opportunity to establish their right to contribution from the Sheriff defendants. The Judge rejected this argument and dismissed the case against the Sheriff defendants. At this point before the taking of testimony was resumed the truck defendants moved that the Sheriff defendants be brought in as co-defendants for contribution but this motion was denied. The case then proceeded to trial as to the truck defendants and resulted in a judgment against them for the plaintiff in the sum of $12,-000. The plaintiff has taken no appeal but the truck defendants have appealed on the grounds stated in the court below and set out above.

The position of the appellants is that the Sheriff's car was negligently driven because the driver attempted to pass the truck at a road intersection in violation of North Carolina statutes and also because the driver of the Sheriff's car, as he was overtaking the truck from the rear, failed to observe a signal from the truck that it was about to turn to the left at the intersection. Relevant evidence bearing on this situation, some of which was taken after the case was dismissed as to the Sheriff defendants, may be summarized as follows.

The vehicles were proceeding in a southerly direction in the southbound section of a 4-lane divided highway, the truck ahead in the right hand lane and the automobile overtaking the truck from the rear in the left hand lane. The driver of the truck had been somewhat uncertain as to his whereabouts; but as he

approached the crossroad, he decided to turn to the left. It is conceded that he was negligent in making the turn to the left when a vehicle, which he might have seen if he had looked more carefully, was overtaking him from the rear. It is contended, nevertheless, that the driver of the Sheriff's car was also negligent because he attempted to pass the truck despite its left hand turning signal.

On this point, the evidence is in conflict. The driver of the truck testified that, intending to make the turn, he slowed down to 15 miles an hour, turned on his turning signal, and started to pull into the left hand lane after looking in his rear view mirror and satisfying himself that no vehicle was approaching from behind. He further testified that he did not hear the horn sounded by the automobile before he started to make his turn. On the other hand, the driver of the Sheriff's car testified that he approached the truck from the rear at a speed of about 40 miles an hour, sounded his horn, and, not seeing a turning signal being given by the truck, started to pass.

The collision occurred in the street intersection when the truck, in the act of turning, was partly in the right hand lane and partly in the left hand lane. The right side of the Sheriff's car came into contact with the left side of the truck at the door of the cab.

█ The truck defendants give great weight to the contention that the Sheriff's car attempted to pass the truck at a highway intersection in violation of the North Carolina general statutes, § 20–150(c), which is as follows:

"The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction at any steam or electric railway grade crossing nor at any intersection of highway unless permitted so to do by a traffic or police officer. For the purposes of this section the word 'intersection of highway' shall be defined and limited to intersections designated and marked by the State Highway Commission by appropriate signs, and street intersections in cities and towns."

It is said that the attempted passing of the truck was an illegal and negligent act which obviously contributed to the accident; and, hence, the Sheriff defendants should not have been exonerated from liability. Since the case falls within the literal meaning of the statute, there would seem to be merit in this argument; but, as the District Judge held, it has been decided in a number of jurisdictions that statutes of this kind have no application to multiple lane highways. In the case of a 2-lane roadway in which traffic moves in both directions, the need to prohibit passing at intersections is obvious since the driver in the rear may reasonably anticipate that the car in the lead may desire to turn to the left. To such a situation the statute clearly applies. On the other hand, multiple lane highways are designed to prohibit the movement of traffic in both directions in the same section of the highway. They provide two or more lanes on each side of the highway for traffic moving in the same direction so that a rear vehicle may pass cars ahead without danger of encountering vehicles moving in the opposite direction. That highways of this character were not within the contemplation of the North Carolina legislature when the statute was passed is indicated by subsections (d) and (e) of § 20–150 which provide that the driver of a vehicle shall not drive to the left side of the center of the highway upon the crest of a grade or upon a curve in the highway and that a driver of a vehicle shall not pass another vehicle on any part of the highway marked by prohibitory signs placed by the State Highway Commission. These provisions were plainly not intended to apply to multiple highways which, as noted above, furnish parallel lanes on which vehicles moving in the same direction may pass without encountering traffic coming from the opposite direction. The following cases have so interpreted similar statutes in various states: May v. Warnick, 227 Md. 77, 175

A.2d 413; Wilson v. Stroh, 121 Colo. 411, 216 P.2d 999; Woody v. Cope, 207 Tenn. 78, 338 S.W.2d 551. In the absence of any North Carolina decision on the subject, we follow the predominant authority.

■ We think, nevertheless, that the question of the Sheriff defendants' liability should have been submitted to the jury. Even though, under the proper interpretation of the North Carolina statutes, it is not unlawful and negligent per se for one vehicle to pass another at an intersection on a dual highway, the plaintiff's evidence disclosed circumstances from which the jury might have inferred that the Sheriff was negligent in attempting to pass the truck at an intersection and that, therefore, the accident was caused by the concurrent negligence of the drivers of the two vehicles. A police officer who came to the scene of the accident testified as to statements made by the two drivers. The truck driver stated that before making his turn he looked in his mirror, saw no car approaching from the rear and gave a signal indicating that he was going to turn to the left. On the other hand, the statement of the Sheriff was that he was driving at about 35 miles per hour, that he attempted to pass at the intersection without blowing his horn, that the truck suddenly turned across his path without giving any signal and that, on this account, he could not avoid the collision. This conflicting testimony presented the questions whether the truck driver actually gave the turning signal and whether the Sheriff was using due care in attempting to pass another vehicle at an intersection without carefully observing the action of the vehicle ahead; and the jury should have been permitted to pass upon these questions. If, upon the submission of the questions, the jury had found against all of the defendants the contribution statute of North Carolina, G.S. § 1–240, would have come into play.

The answer of the Sheriff defendants to this position is that the truck defendants have no standing to complain of the order of the District Court dismissing the Sheriff defendants from the case and no standing to appeal therefrom. In support of this contention are cited the decisions of the Supreme Court of North Carolina in Lucas v. Norfolk Southern Railways Company, 165 N.C. 264, 80 S.E. 1076 (1914), and Helms v. Citizens Light and Power Co., 192 N.C. 784, 136 S.E. 9 (1926).

In the first of these cases it was held error on the part of the trial court to grant a non-suit as to one of two tort feasors, each of whom had been shown to participate in the negligent wrongdoing but the error, although prejudicial to the plaintiff who did not appeal, was not prejudicial to the co-defendant since his wrongful act was the primary and original cause of the injury. In the second of these cases it was held that the dismissal of the cause as to all of the defendants but one in a tort case was not reviewable on appeal since the plaintiff had not appealed. The effect of the ruling in each of these cases is that a defendant may not exculpate himself from liability for his negligence in a tort case by showing that a co-defendant was also negligent. Neither case related to the right of contribution amongst tort feasors which came into existence later in 1929 by an amendment to North Carolina General Statutes, § 1–240. In the instant case the truck defendants do not dispute their liability to the plaintiff.

The procedure to be followed in North Carolina, when the right of contribution between defendants is claimed, seems to be set forth in Whiteman v. Seashore Transportation Co., 231 N.C. 701, 58 S.E. 2d 752 (1950), wherein the transportation company complained of a non-suit granted to a construction company, its co-defendant in the trial court. Both defendants were sued for damages suffered when the plaintiff's car collided with a bus of the transportation company on a bridge which was under repair by the construction company. At the end of the plaintiff's evidence, the Judge granted a motion of the construction company for nonsuit since the plaintiff had failed to show any acts of negligence on the part

of the construction company. The Trial Judge, however, held open the question of negligence of the construction company as it might affect the claim of the transportation company to contribution and allowed the transportation company to introduce evidence to show negligence on the part of the construction company. That company offered evidence to the contrary, and the issue was submitted to the jury which found for the construction company. The plaintiff took no exceptions and did not appeal. On appeal by the transportation company the court held that the company had had its day in court and the adverse determination of fact left it no ground to complain.

Subsequently, however in Greene v. Charlotte Chemical Laboratories, Inc., 254 N.C. 680, 120 S.E.2d 82, it was held that in an action against joint tort feasors one defendant may not set up a plea for contribution against a co-defendant and thereby preclude dismissal of the co-defendant during the trial and before judgment; but, when the plaintiff proceeds against two or more parties as joint tort feasors, each is entitled to contribution from the other if there is a judgment of joint and several liability against them though, during the course of the trial, neither may preclude the dismissal of the other if the plaintiff fails to make out a prima facie case as to him.

In the case now pending in this court the Sheriff defendants should not have been dismissed at the end of the plaintiff's case, whether the procedure outlined in Whiteman v. Seashore Transportation Company or the procedure outlined in Greene v. Charlotte Laboratories should be followed. As we have seen, the plaintiff had made out a prima facie case against both defendants and, therefore, the dismissal of the Sheriff's defendants was improper. Had this not been done the case would have proceeded against both groups of defendants, and the jury in making its decision as to the liability of the Sheriff defendants would have had the benefit not only of the plaintiff's testi-mony but also of the testimony offered by witnesses for the truck defendants.

Accordingly, the judgment of the District Court will be affirmed insofar as it adjudicated that the plaintiff recover the sum of $12,000 and costs from the truck defendants, but the judgment will be reversed insofar as it directed a verdict in favor of the Sheriff defendants and dismissed them from the case. Upon the remand, the liability of the Sheriff defendants will be an open question, and the plaintiff may press his claim for damages against them or dismiss the case as to them—whichever course he prefers to take. In either event, the truck defendants, having admitted their liability to the plaintiff, will be at liberty to press their claim for contribution against the Sheriff defendants and, to this end, to amend their pleadings and take such action as may be required by the North Carolina statutes.

Affirmed in part and reversed in part and remanded for further proceedings.