ST. JOHN v. BRATTON.—150 S. W. (2d) 727.

Middle Section.   February 22, 1941.

Petition for Certiorari Denied by Supreme Court, May 17, 1941.

Hofstetter & Hofstetter, of Nashville, for plaintiff in error.
Roberts & Roberts, of Nashville, for defendant in error.

FELTS, J.  Mrs. Bratton sued St. John in the Court of General Sessions for damages for breach of a contract to build her a house. She recovered a judgment for $300.  He appealed to the Circuit Court, where she obtained a verdict and judgment for $500.  He appealed in error.

His first assignment of error is that "there is no material evidence to support the verdict;" his second is that "the evidence preponderates against the verdict;" and the third is that "the verdict and judgment thereon are contrary to the law."  We can consider only the first.  The second cannot be considered because we have no power to weigh the evidence or to determine where its preponderance lies.  The third is too vague and indefinite.  Yarbrough v. L. & N. R. R. Co., 11 Tenn. App., 456, 471, and cases there cited.  So the only question before us is whether there is any material evidence to support the verdict.

The contract was oral, and the main issue was as to its terms. The only witnesses on this question were Mrs. Bratton, her daughter and her son on one side, and St. John on the other.  Her testimony was that in June, 1939, he showed her a five-room house he had built on Hart Avenue in Nashville and agreed to build her one somewhat similar with a single garage, furnishing all the material and labor and giving her a "lock and key job," for $1,800.  She was to some extent corroborated by her two children.  He admitted he had agreed

to build the house for her, but denied that he had agreed to build it for $1,800 or "any other specified sum."

To finance the construction she obtained from the Third National Company a loan of $1,800 on the land on which the house was to be built, and she directed the company to pay out the money to St. John or to his order as the work progressed. The expenses of the loan were $78.25 and the balance, $1,721.75, was paid out by the company from time to time during the period from June 17 to August 26, 1939, $259.75 being paid on St. John's order to Norvell & Wallace and $1,462 being paid to St. John himself. About September, 1939, he abandoned the work. On October 17, 1939, Mrs. Bratton wrote him a letter calling his attention to the unfinished portions, which were the garage, water main, septic tank, hearth, mantel, commode, kitchen sink, furnace, tank and kitchen cabinet; and she requested him to complete the work at his earliest convenience, reminded him that he had agreed to do his best to have the house ready by September so she could rent or sell it. She also referred to the fact that she was to make a payment of $75 to him on the first of December; and she stated that the letter was intended as a formal notice to him to proceed at once to finish the house according to the contract. It does not appear that he replied to this letter. He did nothing further on the work. She later had it completed at a cost of $512. So we think there is material evidence to support the verdict.

The fourth, fifth and sixth assignments of error present different phases of his insistence that the verdict is excessive; the seventh assignment is that there is no allegation or proof that Mrs. Bratton complied or offered to comply with her part of the contract; and the eighth assignment is that she failed to prove the amount of damages suffered by her by reason of his breach of contract and that the jury could only speculate as to the amount of such damages.

As stated, Mrs. Bratton testified that it cost her $512 to have the house completed. However, it appears that the work she had done varied in some particulars from what she said the contract called for. These variances were that she had a double garage built and a concrete floor put in the basement, while the contract was for a single garage and did not call for a concrete floor in the basement. Also at the time the work was abandoned by St. John the whole of the $1,800, the contract price, had not been paid by Mrs. Bratton. There remained a balance of $78.25 to be paid, as she said, by December 1.

But she introduced two contractors who testified that they looked at the house and estimated that it would cost a little more than $400 to finish the work called for by the contract. The measure of her damages was the difference between the contract price and the cost of finishing the house according to the contract. Brady v. Oliver, 125 Tenn., 595, 620, 147 S. W., 1135, 1141, 41 L. R. A. (N. S.), 60, Ann. Cas., 1913C, 376; East Lake Lumber Box Co. v. Simpson, 5

Tenn. App., 51, 58. It is true that the evidence does not show the difference between the cost of building a single garage and the cost of building a double garage, and does not show the cost of the concrete floor in the basement. But this does not render the evidence indefinite or speculative so as to afford no guide for the jury in fixing her damages. Mrs. Bratton's testimony and the estimates of the contractors afforded a sufficient basis to enable the jury to approximate the damages. In such a case as this, proof of the damages does not have to be so certain and definite as to exclude the possibility of error or mistake. The law does not require exactness of computation in suits that involve questions of damages growing out of contract or tort. Provident L. & A. Ins. Co. v. Globe Ind. Co., 156 Tenn., 571, 576, 3 S. W. (2d), 1057, 1058. However, we do think the verdict is excessive to the extent of $78.25, the unpaid balance of the contract price. Mrs. Bratton was entitled only to the difference between the contract price and the cost of finishing the performance of the contract. The jury allowed her the cost of finishing the performance, without deduction of this $78.25, the unpaid balance on the contract price. This is a matter, however, which can be cured by suggestion of remittitur of that amount, which we accordingly do.

If the remittitur thus suggested is accepted by Mrs. Bratton, the judgment of the Circuit Court will be affirmed to the extent of $421.75, and judgment will here be entered for $421.75, with interest thereon from the date of judgment below and for the costs accrued in the Circuit Court; otherwise the judgment will be reversed and the verdict of the jury set aside, and the cause will be remanded to the Circuit Court for a new trial. If this remittitur is accepted by Mrs. Bratton, the costs of the appeal in error will be adjudged against S. G. St. John and the surety on his appeal bond; otherwise, the costs of the appeal will be paid by Mrs. Bratton. If Mrs. Bratton accepts the remittitur, she will signify such acceptance by notice to the Clerk within fifteen days from this date.

Faw, P. J., and Crownover, J., concur.