GLENN CURTIS HOBBS et al., Plaintiffs in Error, v. MACK LIVESAY, Defendant in Error.— 372 S. W. (2d) 199.

Eastern Section. March 12, 1963.

Certiorari Denied by Supreme Court July 15, 1963.

Phillips & Hale, Rogersville, for plaintiffs in error.

M. Lacy West, Kingsport, and J. Edward Hyder, Rogersville, for defendant in error.

McAMIS, P.J. Mack Livesay brought this action against Glenn Curtis Hobbs and E. C. Hobbs to recover for personal injuries and property damages growing out of a collision of the Livesay and Hobbs automobiles. There was a verdict and judgment for $20,000.00 from which defendant has appealed.

The assignments are that (1) there is no material evidence of negligence in the operation of the Hobbs car, (2) plaintiff Livesay was guilty of proximate contributory negligence as a matter of law and (3) the verdict is excessive.

The collision occurred about dark at 6:00 o'clock P.M. on December 5, 1961, at the intersection of Zion Hill Road, a graveled county road, and Carter's Valley Road,

a black-topped road some 20 feet in width. There was no stop sign. Carter's Valley Road runs east-west, Zion Hill Road north-south. Plaintiff approached the intersection from the south. The Hobbs car, owned by E. C. Hobbs and driven by his son, defendant Glenn Curtis Hobbs, aged 16, approached from the east. In this situation, defendants contend that, since their car was on plaintiff's right, it was plaintiff's duty to yield the right of way under T.C.A. sec. 59-828 providing:

"(b) When two (2) vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

The declaration charges and the proof for plaintiff is that plaintiff stopped before entering the intersection, then started to cross Carter's Valley Road when the driver of the Hobbs car, approached from the east, without having his headlights burning, and struck the plaintiff's car on its right. There is no question but that it was dark enough to require lights.

On appeal we are required to take the strongest legitimate view of the evidence in favor of the plaintiff who comes to this court with a verdict and judgment in his favor and resolve all reasonable inferences and conflicts in the proof in his favor. D. M. Rose & Company v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897, and cases there cited.

There is material evidence in the record from which the jury could have found that the lights on plaintiff's car were burning and that the lights on the Hobbs car were not.

There being no complaint as to the admission or rejection of evidence or the charge of the Court and it appearing from the evidence that the two vehicles approached the intersection at approximately the same time, the question is whether the plaintiff's failure to yield the right of way is excused by the failure of the driver of the Hobbs car to have his lights on. Stated differently, which omission of duty was the proximate cause of the collision?

The fact that an automobile approaching an intersection on the right has the right of way under the statute over another automobile approaching from the left does not relieve the driver having the right of way from the duty of exercising ordinary care in driving into the intersection and whether his failure to exercise such care is the proximate cause of a collision is generally for the jury. Waller v. Morgan, 23 Tenn. App. 355, 133 S. W. (2d) 614.

"Possession of the right of way on the part of the driver of an automobile never excuses heedless or reckless conduct on his part." 5A Am. Jur. 420.

Unless, as defendant insists, a different conclusion is required by Smith v. Murphy, 48 Tenn. App. 299, 346 S. W. 2d 276, we think the question of proximate cause was for the jury.

In that case Mrs. Murphy, the original defendant, by reason of having approached the intersection from the right, had the right of way. As there held, she had the right until the contrary appeared to assume that the plaintiff Smith would yield in obedience to the statute. Under the evidence introduced by Smith (in the form of Mrs. Murphy's testimony at another trial) she ap-

proached the intersection at 25 miles per hour, slowed down to 5 or 10 miles per hour as she entered and upon seeing that Smith was not going to yield applied her brakes and stopped when the front of her car was only 3 feet within the intersection. It was held that this evidence was insufficient to carry the burden of proof for Smith that she was guilty of negligence in the operation of her car and, on that ground, a verdict was properly directed in her favor at the conclusion of Smith's proof in chief.

After her motion for a directed verdict against Smith as plaintiff had been sustained, Mrs. Murphy then testified in her own case against Smith substantially as she had in the prior hearing. On her admission, however, that she saw the Smith truck when 100 feet away the trial court directed a verdict in favor of Smith. This was held error on the ground that a jury could say that she did what she could to stop after seeing that Smith was not going to yield the right of way as the statute required him to do.

In that case Mrs. Murphy was in the same position as the Hobbs car in this case, i. e., she had the right of way. The question was whether she should have stopped even though she had the right of way upon seeing the Smith truck when 100 feet away. This was held to present a question for the jury in her suit against Smith. In this case we must assume that the jury found that the Hobbs car approached in the darkness without lights leading plaintiff to believe he would encounter no other vehicle in passing through the intersection. This, in our opinion, made the case one for the jury on the questions of negligence and contributory negligence.

■ Giving due weight to the verdict of the jury, now approved by the trial judge, we do not feel warranted in granting a remittitur.

Plaintiff, 53 years of age, is a watch repairman. At the time of the accident, he was operating a watch repair shop earning approximately $100.00 per week. He had in his car $1,500.00 worth of watches at the time of the accident which were largely lost or destroyed. At the time of the trial he had lost several months from his work and was then working with difficulty requiring him, because of injuries to his arm and hand, to rest for 20 minutes at a time. His medical and hospital bills total $1,285.00 and, according to Dr. Doty, his physician, he will require another operation to break the adhesions.

Dr. Doty's testimony is that he had a transverse fracture of the right arm between the elbow and the shoulder with some splintering of the bone; that the fractured ends were separated and could not be manipulated into position, requiring the use of a pin through his elbow. This failed, however, because after several days of traction it was decided that tissues had gotten between the ends of the bone. An incision was then made over the fracture so that the ends could be manipulated into proper position under the direct vision of the doctor and another incision made in the shoulder and a pin run through the hollow part of the bone from the shoulder down toward the elbow to hold the bone in position. He was hospitalized on two subsequent occasions because of a nervous condition which had developed and to give him supervised exercises and physiotherapy.

At the time of the trial in July, 1962, the healing was still not complete, the pin having been removed in May, 1962.

Dr. Doty testified that he still had at the time of the trial a great deal of stiffness in his shoulder and fingers with definite limitation of motion in both which will cause permanent difficulty in executing the fine movement of his fingers incident to doing fine repair work on watches with small tools. In addition, he will likely have arthritic difficulties and continue to suffer from apprehension and worry about his condition.

It is apparent from the treatments indicated that plaintiff has suffered greatly and will continue to suffer. He has suffered a permanent, partial impairment of his ability to earn a living.

There is no method by which damages such as appear in this case can be mathematically calculated. Our cases hold that the amount of damages in such cases is primarily for the jury and trial judge and that the Court on appeal will not interfere with the amount so fixed unless there appears to have been an abuse of discretion. D. M. Rose & Co. v. Snyder (supra), 185 Tenn. 499, 206 S. W. (2d) 897; Town of Clinton v. Davis, 27 Tenn. App. 29, 177 S. W. (2d) 848; McAmis v. Carlisle, 42 Tenn. App. 195, 300 S. W. (2d) 59.

Before concluding this opinion we wish to call attention of counsel to the rule of the Court of Appeals adopted June, 1962, requiring citation to the official reports of the Supreme Court and Court of Appeals. Because this rule has not yet been published we have overlooked its violation in this instance.

Affirmed.

Cooper, J., and Taylor, Special Judge, concur.