JAMES PAUL McBEE, Appellant, v. JOHN H.
WILLIAMS, Appellee. —405 S.W.(2d) 668.

Eastern Section. March 30, 1966.

Certiorari Denied by Supreme Court August 1, 1966.

Richard Stair, Knoxville, for appellant.

Poore, Cox, Baker & McAuley, Knoxville, for appellee.

PARROTT, J. Richard Williams, age 11, was struck and killed by an automobile driven by the defendant, James Paul McBee. John H. Williams, his father, brought this wrongful death action resulting in a jury verdict for $20,000, from which judgment was entered.

Defendant has appealed and assigned as error: the verdict of the jury is against the weight of the evidence; the court's refusal to admit into evidence the investigation report of the police officer; and the judgment is excessive.

The first assignment of error that the verdict and judgment is against the weight of the evidence is insufficient in law because this Court has no power to weigh the evidence. St. John v. Bratton, 25 Tenn.App. 64, 150 S.W.2d 727; Sullivan v. Crabtree, 36 Tenn.App. 469, 258 S.W.2d 782; Woody v. Cope, 207 Tenn. 78, 338 S.W.2d 551, 4 A.L.R.3d 314. Nevertheless, we have read this record, finding issues which required the case to be submitted to the jury and material evidence to support the verdict.

This unfortunate accident happened on October 5, 1964, at about 6:00 p. m., while daylight, on West Oldham Avenue within the city limits of Knoxville, Tennessee. West Oldham Avenue at the point of the accident runs east and west through Western Heights Addition, a heavily populated housing project area with apartments on both sides of the street. Defendant, James Paul McBee,

was driving east and the deceased was crossing from south to north approximately 50 feet east of Bonnyman Street which dead ends on the north side of West Oldham Avenue. As defendant drove east, he traveled upgrade until reaching the intersection of Bonnyman where a hill crested and the street went downgrade.

On defendant's right, along the south curb of West Oldham, there was a continuous row of parked cars. The deceased, in an attempt to cross the street, emerged from between two of these cars in a fast walk or trot and was struck by the front of the automobile near the center of West Oldham. His twin brother preceded him across the street and was near the north curb at the time of the accident.

Mr. Brewer, an eye-witness to the accident who was traveling on West Oldham in the opposite direction and less than a half block away at the time the boy was struck, testified he observed the first boy, who was about five feet ahead of the deceased, cross the street and as the second boy emerged from between the parked cars, the McBee vehicle crested the hill some two car lengths from where the boy was struck. He further testified both boys were "not running but maybe a trot." Brewer was hesitant to estimate the speed of defendant's car but estimated it from 15 to 30 miles an hour. On cross-examination he stated the car could have been going faster.

Two other disinterested witnesses, who observed the car as it came up the hill but did not actually see the impact which occurred just over the crest of the hill, testified as to the speed of the defendant's automobile. One fixed the speed at 30 to 35 miles an hour, the other at 30 to 45 miles an hour and both of these witnesses' attention was attracted to the car because of its unusual

speed in going through this heavily populated neighborhood, which had a speed limit of 30 miles per hour fixed by city ordinance.

Defendant testified his speed was about 20 miles per hour and he saw the first boy crossing the street but did not see the second boy until just at the time of the impact. It is not clear as to the actual point of impact but it is undisputed defendant's car laid down 38 feet of skid marks and the boy was struck by the front part of the car. Defendant further testified he did not observe children playing along the sidewalks or had he seen the signs "Slow—Children" which were posted on both sides of West Oldham.

From this evidence we are of the opinion the jury could have inferred the defendant failed to keep a proper lookout ahead and was traveling at an excessive rate of speed under the circumstances and conditions.

Turning now to the question which counsel for the defendant considers the most serious error in this case; i.e. the trial judge's excluding from the evidence the contents of the investigating police officer's written report of the accident.

During the cross-examination of Sgt. Gerald Merritt, who, along with another investigating officer of the Knoxville Police Department, made the report, the defendant attempted to introduce into evidence the portion of the report under "Traffic Violations" where the officers had placed a check mark as to "No improper driving indicated." It is a part of Sgt. Merritt's duties to investigate all accidents within the City of Knoxville which result in a fatality. He has had special training in investigating automobile accidents at Northwestern University and is

an expert to some degree on reaction time, skid marks and their relativity to the speed of an automobile.

█ In counsel's brief it is stated he is unable to find any cases directly in point on this question. It is our opinion the question of admissibility of such reports is controlled by T.C.A. 59-1014 which says: "No reports or information mentioned in this section shall be used as evidence in any trial, civil or criminal * * *" This section is found in the Code under Chapter 10, Accidents, Arrests, Crimes and Penalties. T.C.A. 59-1008, within the same chapter, requires: "Every law enforcement officer who, in the regular course of duty, investigates a motor-vehicle accident of which report must be made as required in this section * * * [shall] forward a written report of such accident to the department."

█ If our construction of these statutes is wrong and the question is controlled by the common law, still yet these reports would not be admissible in evidence except for the purpose of contradiction or impeachment. In 69 A.L.R.2d 1148 there is a lengthy annotation with a large collection of cases, which are too numerous to cite in this opinion, discussing admissibility of a report of police and other public officers as to the cause or responsibility for an accident. On page 1151, the textwriter states what is considered to be the universal rule:

"Summarizing the decisions, without at this point going into detail, it may be said that generally the courts exclude statements contained in a report of a police or other public officer or employee concerning the cause of or responsibility for an injury to the person or property, notwithstanding the rule that public records and reports are admissible in evidence.

"However, such reports have been held admissible where they contained admissions against interest, were required by law, or were offered for the purpose of impeaching the testimony of the person preparing the report."

There is no insistence this report comes within any of the above exceptions to the general rule.

■ The principal objection to the admissibility of such reports is: the information contained in the report is hearsay and is a mere opinion or conclusion not based on personal observation. Another reason, and in our opinion just as vital, is: if the report contains an opinion or conclusion relating to the cause of or responsibility for an accident or injury, such evidence invades the province of the jury as to the very matters to be determined.

■ We think the above reasons for exclusion of such reports are sound and in accord with the fundamental rules of evidence and the trial judge properly excluded the contents of the report. Especially, this is true where the party offering the report has had the full benefits of all the material covered by the report by cross-examination of the officer who made the investigation and prepared the report. Banks v. Southern Potteries, Inc., 30 Tenn. App. 199, 204 S.W.2d 382.

The final contention is the award of the jury and judgment entered thereon is excessive.

The excessiveness of judgments in personal injury cases has been before this court many times. In considering such, we are governed by the following rules as set out in the case of Campbell v. Campbell, 29 Tenn. App. 651, 199 S.W.2d 931:

"The amount of damages is primarily a question for the jury, and their verdict, approved by the trial judge, is entitled to great weight in this court, if there is no claim of corruption or dishonesty. Phillips v. Newport, 28 Tenn.App. 187, 187 S.W.2d 965."

Also in the case of Hobbs v. Livesay, 52 Tenn.App. 108, 372 S.W.2d 199, it is stated:

"There is no method by which damages such as appear in this case can be mathematically calculated. Our cases hold that the amount of damages in such cases is primarily for the jury and the trial judge and that the Court on appeal will not interfere with the amount so fixed unless there appears to have been an abuse of discretion. D. M. Rose & Co. v. Snyder (supra), 185 Tenn. 499, 206 S.W.2d 897; Town of Clinton v. Davis, 27 Tenn.App. 29, 177 S.W.2d 848; McAmis v. Carlisle, 42 Tenn.App. 195, 300 S.W.2d 59."

The proof shows Richard Williams, age 11, was a strong, healthy, intelligent boy and his grades in school were above average. This Court, in an opinion handed down November 23, 1965, approved a judgment in the amount of $50,000 for a nine-year old boy of similar qualities and abilities in the case of Southern Railway Co. v. Sloan. So, we cannot say this $20,000 judgment is excessive.

Thus, all assignments of error are overruled, the judgment below affirmed with the costs taxed to the appellant.

McAmis, P. J., and Cooper, J., concur.