IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 16, 2004 Session

## IN THE MATTER OF N.P., W.N., AND C.N., Children Under the Age of 18 Years

**Direct Appeal from the Juvenile Court for Lauderdale County**
**No. J5-961     Rachel Anthony, Judge**

---

**No. W2004-00345-COA-R3-PT - Filed December 23, 2004**

---

This appeal involves the termination of the parental rights of Mother and Father to their children. After a hearing, the Lauderdale County Juvenile Court terminated Mother's parental rights over W.N. and C.N. on the grounds of abandonment for failure to support and severe child abuse. Further, the trial court found that termination of Mother's parental rights is in the best interest of the children. Mother now seeks review by this Court, and we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Barbara A. Deere, Dyersburg, TN, for Appellant

Paul G. Summers, Attorney General & Reporter, Douglas Earl Dimond, Senior Counsel, Nashville, TN, for Appellee

## OPINION

### Facts and Procedural History

Aimee R. Paschall ("Mother" or "Appellant") and Michael Newby ("Father") are the parents of W.N. (d.o.b. 3/27/1997) and C.N. (d.o.b. 4/24/2000). Mother and Mark Pfeffer ("Pfeffer") are the parents of N.P. (d.o.b. 4/30/1995), who lived with Mother and Father.[1] On September 23, 2002,

---

[1]     On March 24, 2003, N.P. was placed in the physical custody of Pfeffer for a 90-day trial visit to effectuate N.P.'s transition into Pfeffer's legal custody. Though DCS filed a petition to terminate Mother's and Pfeffer's parental rights over N.P. on May 19, 2003, the trial court awarded Pfeffer legal custody of N.P. on July 10, 2003, and,

(continued...)

Mother and Father took C.N. to see a physician about an ear infection and a medical examination. During the course of the examination, the physician discovered C.N. had genital warts, a rectal tear, and the skin on the end of C.N.'s penis was red and irritated. Additionally, C.N. had faded bruises on his back. On or about September 23, 2002, Father was incarcerated, and he was found guilty of one count of felony child abuse resulting in injury and two counts of misdemeanor child abuse and neglect in the Lauderdale County Circuit Court. He received one prison sentence of two years and two prison sentences of eleven months and twenty-nine days, all to run consecutively.

Subsequently, on September 25, 2002, the Tennessee Department of Children's Services ("DCS" or "Appellee") filed a petition for temporary custody of N.P., W.N., and C.N. in the Lauderdale County Juvenile Court. On the same day, the lower court ordered that the three children be placed in DCS's protective custody. On March 17, 2003, a hearing was held on the petition for temporary custody filed by DCS. Mother, Father, and Pfeffer were each represented by counsel and, after being informed of their rights, Mother and Father stipulated that the three children were sexually and physically abused, amounting to "severe child abuse" as defined by section 37-1-102(b)(21)(B) of the Tennessee Code. Mother further stipulated that she knowingly failed to protect the children from such abuse.

On May 19, 2003, DCS filed its petition to terminate Mother's and Father's parental rights. Prior to a hearing on this petition, on July 10, 2003, the lower court held a hearing on Pfeffer's petition to intervene for change of custody of N.P. At such hearing, the lower court awarded Pfeffer legal custody of N.P., ordered Mother to pay Pfeffer monthly child support, and stated that Pfeffer would supervise Mother's visits with N.P. On October 13, 2003, the juvenile court held a hearing on DCS's petition to terminate Mother's and Father's parental rights over W.N. and C.N. The trial court terminated Father's parental rights on the grounds that Father committed severe child abuse, he was sentenced for more than two years of imprisonment for conduct against the children, and placing the children in Father's legal and physical custody would pose a substantial risk of harm to the children's physical or psychological welfare.[2] The juvenile court also terminated Mother's parental rights on the grounds that she abandoned her children by willfully failing to pay support for them and for severe child abuse. Additionally, the lower court found that termination of Mother's and Father's parental rights is in the best interest of W.N. and C.N. Mother appealed this decision and presents the following issues, as we perceive them, for our review:

I.      Whether the trial court erred when it admitted evidence of Mother's statement to police officials on or about September 23, 2002, and denied evidence of alleged statements made by counsel for DCS;

II.     Whether the trial court erred when it determined there was clear and convincing evidence to terminate Mother's parental rights on the ground of severe child abuse;

---

[1](...continued)
subsequently, DCS voluntarily dismissed its petition to terminate the parental rights with regard to N.P. Therefore, Pfeffer is not a party to this appeal, and the parental rights over N.P. are not at issue.

[2]      Father waived his right to appeal this decision, and, therefore, he is not a party before this Court.

III. Whether the trial court erred when it determined there was clear and convincing evidence to terminate Mother's parental rights on the ground of abandonment for willfully failing to support W.N. and C.N.; and

IV. Whether the trial court erred when it determined that termination of Mother's parental rights is in the best interest of W.N. and C.N.

For the following reasons, we affirm the decision of the trial court.

## Standard of Review

We review findings of fact by a trial court sitting without a jury *de novo* upon the record with a presumption of correctness, and, unless the evidence preponderates against the findings, we must affirm, absent an error of law. Tenn. R. Civ. P. 13(d); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re L.J.C., A.L.C., & J.R.C.*, 124 S.W.3d 609, 619 (Tenn. Ct. App. 2003). Further, we review issues of law *de novo* with no presumption of correctness. *Valentine*, 79 S.W.3d at 546 (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)).

We also note that a trial court judge holds a special position:

> Where the trial judge has seen and heard the witnesses, especially if issues of credibility and weight to be given oral testimony are involved, considerable deference must be accorded those circumstances on review, because it is the trial court which had the opportunity to observe the witnesses' demeanor and to hear the in-court testimony.

*Moore v. Shoney's, Inc.*, No. M2002-02635-WC-R3-CV, 2003 Tenn. LEXIS 1123, at *2-3 (Tenn. Nov. 20, 2003) (citing *Long v. Tri-Con Indus., Ltd.*, 996 S.W.2d 173, 178 (Tenn. 1999)); *see also State v. Blackwell*, No. W2004-00509-COA-R3-PT, 2004 Tenn. App. LEXIS 739, at *11-12 (Tenn. Ct. App. Nov. 8, 2004). In this case, the trial court found that only Mother was not credible.

## Evidentiary Issues

Mother argues that the trial court erred when it admitted evidence of a report allegedly taken by a police officer on or about September 23, 2002, which included a statement made by Mother, concerning her knowledge of whether the children were abused by Father. Additionally, Mother appears to argue that the trial court erred when it refused to permit certain testimony by Burnett Alby ("Alby"), a clinical therapist for Professional Counseling Services in Dyersburg, Tennessee. (Appellant's Brief p. 9). We begin by noting that "the admission or exclusion of evidence at trial is within the sound discretion of the trial court and will not be overturned absent a finding of abuse of such discretion." *Evans v. Evans*, No. W2001-03037-COA-R3-CV, 2003 Tenn. App. LEXIS 25, at *23 (Tenn. Ct. App. Jan. 14, 2003) (citing *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992)). Additionally, "[a]ppellate courts should permit a discretionary decision to stand if reasonable judicial minds can differ concerning its soundness." *White v. Vanderbilt Univ.*, 21

S.W.3d 215, 223 (Tenn. Ct. App. 1999) (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 695 (Tenn. Ct. App. 1999)); *see also Evans*, 2003 Tenn. App. LEXIS 25, at *23.

First, with respect to the police report, we note that such a report is hearsay and does not fall within the hearsay exception outlined in Tenn. R. Evid. 803(8), which allows the admission of certain public records and reports. *See McBee v. Williams*, 405 S.W.2d 668, 670-71 (Tenn. Ct. App. 1966). After reviewing the record, it appears that such report was never admitted into evidence and it is not in the record. However, we note that there was testimony concerning Mother's statement in the police report, and, additionally, the trial court relied upon a portion of Mother's statement to establish that termination of Mother's parental rights is in W.N.'s and C.N.'s best interest. It appears that such testimony relates to the issue of whether Mother knew or should have known that Father was physically and sexually abusing the children. The trial court found that such statement was written by Mother to the police department. Such a statement would not constitute a police report but an admission by a party opponent, which would make it admissible under Tenn. R. Evid. 803(1.2). Therefore, we cannot say the trial court abused its discretion when it admitted testimony concerning the statement written by Mother.

Even if the evidence at issue involved an inadmissible police report, we note that, pursuant to Tenn. R. App. P. 36(b), such error would not constitute reversible error, because the admission of testimony concerning the statement did not "more probably than not affect[] the judgment or . . . result in prejudice to the judicial process." Tenn. R. App. P. 36(b) (2004). In this case, there was ample evidence to establish that Mother knew or should have known that Father was physically and sexually abusing the children. First, Yolanda Lynch ("Lynch"), one of the children's foster parents, and Lynch's daughter, Rheay Crowder ("Crowder"), testified that N.P. and W.N. said that Father had physically and sexually abused them and that they both alerted Mother to this abuse. Specifically, N.P. and W.N. each told Lynch Crowder that Father would pull down his pants and their pants, lay them down on their stomachs, put a pillow on their faces, put socks on the ends of their hands, and then lie on top of each of them. Further, N.P. stated that he told Mother about the abuse inflicted by Father. The trial court properly determined that such testimony was admissible pursuant to Tenn. R. Evid. 803(25). Additionally, Mother stipulated in a prior court order that she "knowingly failed to protect the children from [severe] abuse" as defined by section 37-1-102(b)(21)(B) of the Tennessee Code. Therefore, even if testimony concerning Mother's statement to the police were excluded, the testimony of Lynch and Crowder and the prior trial court order establish that Mother knew of the physical and sexual abuse of the children.

Second, Mother argues that the trial court erred when it excluded portions of Alby's testimony. When counsel for Mother called Alby to the stand, a sidebar conference was held wherein counsel for DCS argued that Alby should not be permitted to testify to any alleged statements made by counsel for DCS to Mother in the proceedings which led to the prior trial court order, dated April 17, 2003, finding Mother committed severe child abuse. After our review of the record, we cannot say that the trial court abused its discretion when it narrowed Alby's testimony to relevant evidence concerning the issue of whether Mother's failure to pay support was willful and whether Mother made a positive adjustment of circumstances.

## Grounds for Termination

In order to terminate parental rights, a trial court must find, by clear and convincing evidence, that one of the grounds for termination exists and that such termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c). "Clear and convincing evidence" is defined as "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Valentine*, 79 S.W.3d at 546 (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). In this case, the trial court found that termination was proper on the grounds of (1) severe child abuse, and (2) abandonment by willfully failing to support W.N. and C.N. Mother challenges the trial court's finding that DCS carried its burden of proof on these grounds. In order to prevail, Mother must demonstrate that DCS failed to carry its burden of proving both of these grounds since proof of one statutory ground will support the termination of parental rights. *Id.* (citing *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000)). We will address these grounds and the factors determining the best interest of W.N. and C.N. in turn.

## Severe Child Abuse

Mother first argues that DCS failed to prove the ground of severe child abuse by clear and convincing evidence. Section 36-1-113(g)(4) of the Tennessee Code states that a ground for termination of parental rights includes the following:

> (4) The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian. . . .

Tenn. Code Ann. § 36-1-113(g)(4) (2003). In this case, Mother stipulated in a prior proceeding before the Lauderdale County Juvenile Court on DCS's petition for temporary custody that N.P., W.N., and C.N. were sexually and physically abused, amounting to severe child abuse under section 37-1-102(b)(21)(B) of the Tennessee Code. That section provides that "severe child abuse" means:

> (B) Specific brutality, abuse or neglect towards a child which in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or retardation, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct. . . .

Tenn. Code Ann. § 37-1-102(b)(21)(B) (2003). Mother stipulated that she knowingly failed to protect the children from this abuse. Because Mother was found to have committed severe child abuse as defined in section 37-1-102 "under [a] prior order of a court," in this case the

Lauderdale County Juvenile Court, this ground for termination applies and is established by clear and convincing evidence. Because DCS must prove only one ground to terminate a person's parental rights, the issue of whether DCS proved by clear and convincing evidence that Mother abandoned her children by willfully failing to support them is pretermitted.

## Best Interest of the Children

Finally, before a trial court may terminate a person's parental rights, in addition to finding a ground for termination by clear and convincing evidence, it must also find that such termination of parental rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c) (2003). Tennessee Code Annotated § 36-1-113(i) provides:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (2003). Mother argues that termination of her parental rights over W.N. and C.N. is not in the children's best interest. We disagree.

Though there was proof that Mother received counseling after N.P., W.N., and C.N. were removed by DCS, she continued to deny that she had knowledge of any physical or sexual abuse by Father, despite the testimony of Yolanda Lynch regarding statements made by N.P. and W.N. and Mother's stipulation in the juvenile court order dated April 17, 2003, that she knew of the severe child abuse committed against the children. Such evidence supports the trial court's determination that Mother failed to make an adjustment of circumstance. Tenn. Code Ann. §36-1-113(i)(1) (2003). Additionally, Mother failed to obtain employment until approximately two weeks before the hearing on DCS's petition to terminate parental rights in October 2003. Further, various witnesses testified that Mother changed residences between two and four occasions in the year prior to the hearing. The trial court also found, supported by the testimony at trial, that W.N. and C.N. have been in state custody for over a year and are thriving in their current environment. The court determined that W.N. and C.N. had stabilized in their current environment and that a change of caretakers would have a detrimental effect on W.N.'s and C.N.'s emotional, psychological, and medical condition. Tenn. Code Ann. § 36-1-113(i)(5) (2003). Next, the trial court found, and it was undisputed, that Mother paid no child support for the children while they were in DCS's custody. Tenn. Code Ann. § 36-1-113(i)(9) (2003). Finally, the trial court found that Mother's mental or emotional state of mind would be detrimental to W.N. and C.N. and prevent Mother from effectively providing safe and stable care and supervision for W.N. and C.N. Tenn. Code Ann. § 36-1-113(i)(8) (2003). Yolanda Lynch testified that N.P. and W.N. indicated to her that they both told Mother of the physical and sexual abuse by Father. Additionally, Mother stipulated in a prior court order of the juvenile court that she knew of the severe child abuse committed against the children. However, Mother continued to deny that she had any knowledge of any abuse and did nothing at any point in time prior to removal to prevent any abuse. We cannot say that the trial court erred when it determined that termination of Mother's parental rights over W.N. and C.N. is in the best interest of the children.

## Conclusion

For the reasons stated above, we affirm the decision of the trial court. Costs of this appeal are taxed to Appellant, Aimee R. Paschall, and her surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE